Below is an Order of the Court.

*albert E. Radcliffe*

ALBERT E. RADCLIFFE

U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF OREGON

| | |
|---|---|
| In re: | Case No. **09-60419-aer11** |
| **Country Coach, LLC**, | **FINAL ORDER (I) AUTHORIZING DEBTOR (A) TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) AND 364(d)(1) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §363, (II) GRANTING ADEQUATE PROTECTION TO LENDER PURSUANT TO 11 U.S.C. §§361, 362 AND 363 (III) MODIFYING AUTOMATIC STAY, AND (IV) PROVIDING OTHER RELIEF** |
| Debtor. | |

This matter came before the Court on the motion (the "**Motion**"), dated March 19, 2009 by Country Coach, LLC as Debtor and Debtor-in-Possession (the "**Borrower**" or "**Debtor**"), pursuant to Sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 503, and 507(b) of the United States Bankruptcy Code, 11 U.S.C. §§101, *et. seq.* (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

(a)    authorization for the Debtor to obtain post-petition financing (hereinafter, the "**DIP Financing**") not to exceed an aggregate principal amount of $11,500,000 on a revolving basis (the actual available principal amount at any time being subject to conditions precedent as set forth herein and in the DIP Credit Agreement, as defined below), from Wells Fargo Bank, National Association, acting through its Wells Fargo Business Credit operating division (hereinafter, the "**Senior Lender**");

(b)    the granting of adequate protection to the Senior Lender, in its capacity as pre-petition lender, to secure all of the Debtor's obligations to the Senior Lender incurred prior to the Petition Date;

(c)    the granting of adequate protection to Riley Investment Management, LLC (the "**Junior Agent**" or "**Junior Creditor**"), in its capacity as collateral agent, to secure all of the Debtor's obligations to Junior Agent incurred, prior to the Petition Date;

(d)    authorization for the use by the Debtor of Cash Collateral (as such term is defined in Section 363(a) of the Bankruptcy Code) in which the Senior Lender has a security interest;

(e)    pursuant to Bankruptcy Rule 4001, that an interim hearing (hereinafter, the "**Interim Hearing**") on the Motion be held for this Court to consider entry of the proposed interim order annexed to the Motion (the "**Interim Order**") (i) authorizing the Borrower, on an interim basis, to immediately begin borrowing from the Senior Lender (under the DIP Credit Agreement, as defined below) up to an aggregate principal amount of

$11,500,000, on a revolving basis in compliance with the DIP Budget (as defined below) pending the Final Hearing (as defined below), (ii) authorizing the use by the Debtor of Cash Collateral for the purposes set forth below and in the DIP Budget (as defined below), (iii) granting to the Senior Lender, in its capacity as pre-petition lender, the adequate protection described herein, (iv) granting to Junior Creditor the adequate protection described herein, and (v) granting the Senior Lender a superpriority administrative claim and certain priming liens and security interests in connection with the DIP Financing; and

(f)    that this Court schedule a final hearing (the "**Final Hearing**") to be held approximately fifteen (15) days after entry of the Interim Order (subject to the Court's calendar) to consider entry of a Final Order authorizing continued borrowings under the DIP Credit Agreement on a final basis (the "**Final Order**") pending the Termination Date (as defined below).

## Summary of Loan History

The Motion provides the following summary history relating to the DIP Financing:

### Senior Lender

The Senior Lender and the Debtor are parties to that certain Credit and Security Agreement, dated as of May 18, 2007, by and between the Borrower and the Senior Lender (as amended and modified from time to time, the "**Pre-Petition Credit Agreement**"). The Senior Lender made advances to the Debtor under the Pre-Petition Credit Agreement which are evidenced by, *inter alia,* that certain Revolving Note in the

original principal amount of $25,000,000, dated as of May 18, 2007, executed by Borrower in favor of the Senior Lender (as amended and modified from time to time, the "**Senior Revolving Note**") and certain other documents pursuant to which the Senior Lender has continued to make advances to or on behalf of the Borrower from and after May 18, 2007 to the Petition Date (as defined in the Motion) (each such document and agreement as heretofore amended, supplemented or otherwise modified, collectively the "**Ancillary Pre-Petition Credit Agreements**").  The Pre-Petition Credit Agreement, the Senior Revolving Note, the Ancillary Pre-Petition Credit Agreements, and the other loan documentation executed in connection therewith, each such document as heretofore amended, supplemented or otherwise modified, are collectively referred to herein as the "**Existing Senior Credit Agreements**").

Pursuant to the terms of the Existing Senior Credit Agreements, the Debtor granted first priority liens and security interests in favor of Senior Lender in substantially all of the Debtor's personal property assets (the "**Senior Lender's Pre-Petition Collateral**").  In addition, the Debtor granted and a lien in favor of the Senior Lender on the Junior Creditor Pre-Petition Real Property Collateral (as defined below). Collectively, all liens and security interests granted by the Debtor in favor of the Senior Lender prior to the Petition Date shall be referred to as the "**Senior Lender Pre-Petition Liens**".

**Junior Creditor**

Pursuant to that certain Note and Securities Purchase Agreement, dated as of April 8, 2008, by and among the Borrower, Junior Agent (as collateral agent and lender), and certain other entities (together with Junior Agent, the "**Junior Lenders**") (as amended and modified from time to time, the "**Junior Loan Agreement**"), the Junior Lenders made certain loans to the Debtor.  The loans made pursuant to the Junior Loan Agreement are evidenced by, *inter alia*, certain promissory notes in the original aggregate principal amount of $7,000,000 executed by Borrower in favor of Junior Lenders (each as amended, supplemented or otherwise modified, the "**Junior Notes**").  In addition, the Junior Lenders and the Debtor are parties to that certain Security Agreement, dated as of April 8, 2008 (as amended and modified from time to time, the "**Junior Security Agreement**") and certain other documents pursuant to which the Junior Lenders have continued to make advances to the Debtor from and after April 8, 2008 to the Petition Date (as defined in the Motion) (each such document and arrangement as heretofore amended, supplemented or otherwise modified, collectively the "**Ancillary Junior Pre-Petition Credit Agreements**").  The Junior Loan Agreement, the Junior Notes, the Junior Security Agreement, the Ancillary Junior Pre-Petition Credit Agreements, and the other loan documentation executed in connection therewith, each such document as heretofore amended, supplemented or otherwise modified, are collectively referred to herein as the "**Existing Junior Credit Agreements**".

Pursuant to the terms of the Existing Junior Credit Agreements, the Debtor granted the Junior Creditor a first priority lien on certain real property located in Lane County, Oregon as more particularly described in the Subordination Agreement (as

defined below) (the "**Junior Creditor Pre-Petition Real Property Collateral**"; collectively, the Senior Lender Pre-Petition Collateral and the Junior Creditor Pre-Petition Real Property Collateral shall be referred to as the "**Pre-Petition Collateral**"). In addition, the Debtor granted the Junior Creditor liens and security interests in the Senior Lender Pre-Petition Collateral.  Collectively, all liens granted by the Debtor to the Junior Creditor shall be referred to as the "**Junior Creditor Pre-Petition Liens**" (collectively, the Senior Lender Pre-Petition Liens and the Junior Creditor Pre-Petition Liens shall be referred to as the "**Pre-Petition Liens**").

## Subordination Agreement between Junior Lenders and the Senior Lender

The Senior Lender and the Junior Lenders are parties to that certain Debt Subordination and Intercreditor Agreement, dated as of April 8, 2008 (as amended, supplemented or otherwise modified, the "**Subordination Agreement**").  Pursuant to the terms of the Subordination Agreement, the Junior Creditor Pre-Petition Liens are subordinate to the Senior Lender Pre-Petition Liens in the Senior Lender Pre-Petition Collateral.  In addition, pursuant to the Subordination Agreement, the Senior Lender Pre-Petition Liens are subordinate to the Junior Creditor Pre-Petition Liens in the Junior Creditor Pre-Petition Real Property Collateral.

## Procedural Background

The Debtor having filed its *Ex Parte* Motion to Set Hearing on Certain Motions on Shortened Time [Docket No. 92] (the "**Motion to Shorten Time**"); and

The Interim Hearing having been commenced by this Court on March 23, 2009 pursuant to the Debtor's request in the Motion to Shorten Time and concluded on March 30, 2009; and

Due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtor on the twenty largest unsecured creditors of the Debtor, the Senior Lender, Junior Agent, other parties in interest entitled to notice and on the United States Trustee for the District of Oregon; and

The Court having entered the Interim Order (I) Authorizing Debtor (A) to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(2), 364(c)(3), and 364(d) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Lender Pursuant to 11 U.S.C. §§ 361, 362 and 363 (III) Modifying Automatic Stay, (IV) Providing Other Relief, and (V) Scheduling Final Hearing Pursuant to Bankruptcy Rule 4001(B) and (C) (the "**Interim Order**"); and

Upon the Court's review of the Motion and all the pleadings filed in connection with the Interim Hearing and Final Hearing, including all responses and objections to the Motion; having considered all the evidence presented at the Interim Hearing and Final Hearing, including the representations of counsel for the Debtor, the Senior Lender, the Junior Agent, and other parties in interest; and the Court having noted the appearances of all parties in interest present at the Interim Hearing and the Final Hearing and in the record of the Court; and the objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Jurisdiction, Venue and Statutory Basis.*  This Court has jurisdiction over the Debtor's Chapter 11 case (the "**Case**") and the parties and property affected hereby pursuant to 28 U.S.C. §§l57(b) and 1334.  Venue is proper in this District pursuant to

28 U.S.C. §§1408 and 1409. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (D), (G), (M) and (O). The statutory basis for the relief granted herein is pursuant to 11 U.S.C. §§105, 361, 362(d), 363, 364(c), (d), (e), 503, and 507(b).

2.      *Notice*. The notice given by the Debtor of the Motion, the Interim Hearing, and the Final Hearing constitutes due and sufficient notice thereof within the requirements of Rule 4001.

3.      *Debtor's Stipulations*. Without prejudice to the rights of any other party other than the Debtor (but subject to the limitations thereon contained in Paragraphs 15 and 16 below), the Debtor stipulates and agrees that:

(a)      **Senior Lender Pre-Petition Debt:** (i) As of the Petition Date, the Debtor was indebted and liable to the Senior Lender, without defense, counterclaim or offset of any kind, (A) in an aggregate amount exceeding $9,000,000 in respect of pre-petition loans and advances made to the Debtor by the Senior Lender pursuant to the Existing Senior Credit Agreements plus all fees and expenses, due and owing thereunder, including, without limitation, an early termination fee due and owing pursuant to the Pre-Petition Credit Agreement (the "**Early Termination Fee**") in an amount equal to one-half of one percent (0.50%) of the sum of (y) the maximum line limit for revolving advances under the Pre-Petition Credit Agreement, and (z) the maximum line limit for capital expenditure advances under the Pre-Petition Credit Agreement ($889,423.03 of this amount is comprised of certain letter of credit obligations payable by Senior Lender as advances under the Pre-Petition Credit Agreement (the "**Letter of Credit Obligations**"), which Letter of Credit Obligations will become obligations under the DIP

Financing pursuant to the terms of the DIP Credit Agreement) plus (B) any additional fees, costs, expenses, and credit card obligations owed by the Debtor to the Senior Lender under the Existing Senior Credit Agreements (collectively, the "**Senior Lender Pre-Petition Debt**"), (ii) no portion of the Senior Lender Pre-Petition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code, or applicable nonbankruptcy law, and (iii) the Debtor does not have, and hereby forever releases, any claims, counterclaims, causes of action, defenses or offset rights, whether arising under the Bankruptcy Code or otherwise, against the Senior Lender and its respective affiliates, agents, officers, directors, employees and attorneys relating to the Senior Lender Pre-Petition Debt or the Existing Senior Credit Agreements.

(b)    **Senior Lender Pre-Petition Liens**:    The Senior Lender Pre-Petition Liens are (i) valid, perfected, enforceable, first-priority liens and security interests in the Senior Lender Pre-Petition Collateral and a lien on the Junior Creditor Pre-Petition Real Property Collateral which property constitutes virtually all of the Debtor's assets, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code, or applicable nonbankruptcy law, and (iii) subject only to (A) the post-petition liens and security interests granted to the Senior Lender pursuant to the Interim Order, this Final Order and the DIP Credit Agreement (the "**DIP Liens**") and (B) any Prior Liens (as defined below).

(c)    As used herein, the term "**Prior Liens**" means only valid, enforceable, and non-avoidable liens and security interests that were perfected prior to the Petition Date, which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-

bankruptcy law and which are senior in priority to the Senior Lender Pre-Petition Liens under applicable law and after giving effect to any subordination or inter-creditor agreements, including, without limitation the Subordination Agreement.

(d)    the Senior Lender Pre-Petition Collateral includes all cash of the Debtor, including, without limitation, all amounts held in the trust account of Muhlheim Boyd, LLP ("**Muhlheim Boyd**") pursuant to the Court's Order Granting Wells Fargo's Motion to Prohibit and Objection to Use of Cash Collateral and Denying Wells Fargo's Motion for Relief from the Automatic Stay entered February 25, 2009 [Docket No. 47] (the "**Escrowed Sale Proceeds**"), all amounts held in the Debtor's bank account at US Bank (the "**US Bank Account Funds**"), all amounts held in the Debtor's bank account at Citizen's Bank (the "**Citizens Bank Account Funds**"), all amounts held in the Wells Fargo bank account that is subject of the writ of garnishment entered on December 19, 2008 by the District Court of Tarrant County, Texas in favor of Southern Holdings, LLC (the "**Garnished Account Funds**"), and all amounts constituting proceeds of the Senior Lender's Pre-Petition Collateral held in any other account of the Debtor (the "**Unidentified Funds**"; collectively, the Escrowed Sale Proceeds, the US Bank Account Funds, the Citizens Bank Account Funds, the Garnished Bank Account Funds, and the Unidentified Funds shall be referred to as the "**Pre-Petition Senior Lender Proceeds**").

(e)    Prior to the Petition Date, the Senior Lender filed a motion for relief from the automatic stay with respect to the Pre-Petition Collateral consisting of the Debtor's personal property assets (the "**Senior Lender's Stay Relief Motion**"), and the Debtor had no valid defense to the Senior Lender's Stay Relief Motion and did not file an objection thereto.

(f)        As of the Petition Date, the Senior Lender was oversecured in that the value of the Pre-Petition Collateral exceeded the amount of the Senior Lender Pre-Petition Debt.

(g)        As of the Petition Date, the Debtor was indebted and liable to Junior Agent in an aggregate amount exceeding $15,000,000 (the "**Junior Creditor Pre-Petition Debt**").

4.        *Findings Regarding the DIP Financing.*

(a)        Good cause has been shown for the entry of this Final Order.  The Debtor requires the DIP Financing and use of Cash Collateral in connection therewith in order to operate and reorganize the Debtor's business.

(b)        The Debtor has an immediate need to obtain the DIP Financing and use of Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors and suppliers, and to satisfy other ordinary working capital needs.  The ability of the Debtor to obtain sufficient working capital and liquidity through the use and turnover of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the Debtor and a successful reorganization of the Debtor.

(c)        The Debtor is unable to obtain adequate unsecured credit allowable under Section 503(b)(l) of the Bankruptcy Code as an administrative expense.  A post-petition credit facility in the amount and on the terms provided by the DIP Financing is unavailable to the Debtor without the Debtor granting to the Senior Lender the DIP Liens, the DIP Obligation Superiority Claim (as defined below), the Senior Lender

Adequate Protection Claim (as defined below), the Senior Lender Adequate Protection Liens (as defined below), the Junior Creditor Adequate Protection Superpriority Claim (as defined below), and the Junior Creditor Adequate Protection Liens (as defined below). Further, the Senior Lender is unwilling to allow the Debtor to use its Cash Collateral on different terms than are contained herein, and there is no basis under which to provide the Senior Lender with adequate protection of its interest in the Pre-Petition Collateral outside the terms of this Final Order.

(d)     Based upon the record before the Court and the Debtor's representations, the Court concludes that the terms of the DIP Financing on an interim basis are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duty and are supported by reasonably equivalent value and fair consideration.

(e)     The DIP Financing has been negotiated in good faith and at arm's-length between the Debtor and the Senior Lender, and any advances and loans made to the Debtor by the Senior Lender pursuant to the Debtor-in-Possession Credit and Security Agreement substantially in the form attached as **Exhibit A** to the Motion, as such may have been modified as of the date hereof (the Debtor-in-Possession Credit and Security Agreement and all documents related thereto, are referred to as the "**DIP Credit Agreement**"), shall be deemed to have been extended by the Senior Lender in good faith, as that term is used in Section 364(e) of the Bankruptcy Code.

(f)     Consummation of the DIP Financing in accordance with this Final Order and the DIP Credit Agreement is in the best interest of the Debtor's estate.

(g)    As of the Petition Date, the Senior Lender was oversecured such that the value of the Senior Lender Pre-Petition Collateral exceeded the amount of the Senior Lender Pre-Petition Debt.

(h)    The Debtor's payment of the Pre-Petition Senior Lender Proceeds to the Senior Lender pursuant to the terms of the Interim Order and the Senior Lender's application of the Pre-Petition Senior Lender Proceeds to the Senior Lender Pre-Petition Debt are hereby approved and ratified.

(i)    Based on the circumstances and record of this Case and the evidence presented at the Interim Hearing and the Final Hearing, good cause and sufficient justification has been presented for incorporation of the Reserved Provisions (as defined in the Interim Order) into this Final Order with such modifications provided in this Final Order.

5.    *Authorization of the DIP Financing and the DIP Credit Agreement.*

(a)    The Debtor is hereby authorized to borrow pursuant to the DIP Credit Agreement up to an aggregate principal amount of $11,500,000 in accordance with the terms of the DIP Credit Agreement and pursuant to the DIP Budget (as defined below), which shall be used, among other things, for the purpose of providing the Debtor working capital necessary for the successful reorganization of the Debtor.

(b)    In furtherance of the foregoing, the Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of amended security agreements and replacement financing statements), and to pay all fees, that may be reasonably

required or necessary for the Debtor's performance of the DIP Financing, including, without limitation:

(i)       the execution, delivery and performance of the DIP Credit Agreement and any exhibits attached thereto, and any other security documents contemplated thereby or requested by Senior Lender in connection therewith,

(ii)      performance of all other acts required under or in connection with the DIP Credit Agreement, the Interim Order, and this Final Order.

(c)       The DIP Credit Agreement constitutes a valid and binding obligation of the Debtor, enforceable against Debtor in accordance with its terms, except for those that are inconsistent with this Final Order.  No obligation, payment, transfer or grant of security under the DIP Credit Agreement shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code, or under any applicable law, or be subject to any defense, reduction, offset or counterclaim.

(d)       The Debtor is hereby authorized to borrow, repay and re-borrow under the DIP Credit Agreement, subject to the limitations provided in the DIP Budget and this Final Order.  Provided that the DIP Financing has not otherwise been terminated due to the occurrence of an Event of Default (as defined below), the term of the DIP Financing will end on the earlier of: (y) December 31, 2009, and (z) the effective date of a plan of reorganization acceptable to Senior Lender (the "**Termination Date**").  The Senior Lender shall not have any obligation or responsibility to monitor the Debtor's use of the DIP Financing and may rely on the Debtor's reporting and representations that the amount of the DIP Financing requested at any time, and the use thereof, is in accordance

with the requirements of the DIP Credit Agreement, the DIP Budget, the Interim Order, and this Final Order.

(e)        All advances under the Interim Order are hereby approved and ratified.

(f)        Pursuant to the DIP Credit Agreement, Borrower shall pay Senior Lender a Commitment Fee of $180,000 (the "**Commitment Fee**") payable in monthly installments equal to $20,000 (each a "**Commitment Fee Payment**").    The initial Commitment Fee Payment was due and payable on April 1, 2009, and each subsequent Commitment Fee Payment shall be due and payable on the first (1st) day of each calendar month until the Termination Date.  To the extent that the Termination Date occurs prior to the due date of any Commitment Fee Payment, such Commitment Fee Payment shall not be collected by the Lender.  Each Commitment Fee Payment shall be fully earned as of the date such Commitment Fee Payment is due and owing and shall not be subject to refund or rebate.

(g)        The DIP Financing may be used by the Debtor through and including the Termination Date, for the purposes and in amounts not to exceed those set forth in the DIP Budget (as defined below) for operating and working capital purposes and for any other expenses approved by the Court and the Senior Lender in accordance with the terms and conditions of the Interim Order, this Final Order and the DIP Credit Agreement.  The budget attached hereto as **Exhibit A** (the "**Initial DIP Budget**") may be replaced, modified, or supplemented upon the Debtor's request with a subsequent budget approved by Senior Lender in Senior Lender's sole discretion and without further order from this Court (the Initial DIP Budget or any such subsequent budget approved by

Senior Lender shall be referred to as the "**DIP Budget**").  During the term of this Final Order, the Debtor shall comply with the terms of the DIP Budget in accordance with the terms of the DIP Credit Agreement.  Any failure by the Debtor to so comply with the DIP Budget shall be an Event of Default pursuant to Paragraph 24 below.  To the extent the DIP Budget presently anticipates any "out of formula advances," the Debtor is hereby authorized and permitted to obtain such advances only so long as it complies with the DIP Budget as provided by the DIP Credit Agreement, and the Senior Lender consents in writing thereto.

(h)    The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Final Order and the DIP Credit Agreement, in each case without further notice, motion or application to, order of, or hearing before, this Court.  The Debtor shall pay on demand all fees, costs, expenses and other charges payable under the terms of the DIP Credit Agreement, including, without limitation, those fees, costs and expenses described in section 2.6 (Fees), section 8.5 (Costs and Expenses), and section 8.6 (Indemnity) of the DIP Credit Agreement.  None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; provided, that the Senior Lender shall submit copies of its professional fee invoices to the Debtor, the U.S. Trustee and counsel for any official committee of unsecured creditors appointed in the Case (the "**Committee**") (and any subsequent trustee of the Debtors' estates).  Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work

product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine.  The U.S. Trustee and the Committee (and any subsequent trustee of the Debtor's estate) may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by the Senior Lender; provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to the Senior Lender no later than ten (10) days after the objecting party's receipt of the applicable professional fee invoice and (ii) it describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses; provided, further, that the Debtor shall immediately pay any portion of the fees, costs and expenses included in any professional fee invoice submitted by the Senior Lender that is not subject of any objection filed by the U.S. Trustee or the Committee upon the expiration of the ten (10) day objection period provided in this Paragraph 5(h).  Any hearing on an objection to payment of any fees, costs and expenses of the Senior Lender set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs and expenses which are the subject of such objection.  The Debtor shall indemnify the Senior Lender to the extent set forth in the DIP Credit Agreement, including, without limitation, as provided in Section 8.6 (Indemnity) of the DIP Credit Agreement.  All such unpaid fees, costs, expenses, charges and indemnities that have not been disallowed by this Court on the basis of an objection filed by the U.S. Trustee or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall

constitute DIP Obligations and shall be secured by the DIP Collateral and the Pre-Petition Collateral as specified in this Final Order.  Any and all fees, commissions, costs and expenses paid prior to the Petition Date by the Debtor to the Senior Lender in connection with or with respect to the DIP Facility or DIP Credit Agreement are hereby approved in full.

(i)        As part of the DIP Budget and the Debtor's request to use Cash Collateral, the Debtor proposes to create and fund a trust fund for professionals on a post-petition basis in order to pay the Debtor's and the Committee's professional fees and costs as the Court may authorize and allow by subsequent order following notice and hearing ("**Professional Fund**").   The DIP Budget provides for scheduled payments of professional fees and expenses for the Debtor's professionals and the Official Committee of Unsecured Creditors' professionals (each a "**Scheduled Professionals Payment**") The Debtor proposes to deposit each Scheduled Professionals Payment into the Professional Fund in accordance with the amounts provided in the DIP Budget; provided, however, the Debtor shall not deposit any funds into the Professional Fund with respect to any professional fees and costs incurred after the Termination Date.  All amounts in the Professional Fund shall be deposited into a trust account maintained by Stoel Rives LLP in trust for payment of allowed fees and costs to the Debtor's professionals and the Committee's professionals, and any amounts payable pursuant to any other order entered by this Court authorizing interim periodic payment of professional fees, subject to final allowance of such fees and costs.  All funds so deposited shall be considered carved-out of and free of any security interest or claims of the Senior Lender, the Junior Creditor or other lien holders and shall be used solely for payment of allowed fees and costs of the

Debtor's or the Committee's Chapter 11 professionals to the extent such amounts are specifically provided by the DIP Budget and were deposited with respect to professional fees and costs incurred prior to the Termination Date.  To the extent the funds deposited into the Professional Fund exceed the total of all allowed Chapter 11 fees and costs of the Debtor's and Committee's professionals, such funds shall be paid to the Senior Lender.

(j)    In the regular course of its business, the Debtor proposes to accept good faith deposits from customers (each a "**Purchase Deposit**") in connection with certain purchase orders (each a "**Purchase Order**").  The Debtor shall deposit any and all such Purchase Deposits into an escrow account maintained by the Senior Lender (the "**Purchase Deposits Account**").  The Purchase Deposits Account shall at all times remain separate from any and all of the Debtor's other bank accounts, no funds other than Purchase Deposits shall be deposited into the Purchase Deposits Account, and the Debtor shall not spend, transfer, withdraw or otherwise use any funds contained in the Purchase Deposits Account except as provided in this Paragraph 5(i).  Each Purchase Deposit shall immediately become the Senior Lender's Cash Collateral (as defined below) and the Debtor shall immediately transfer any and all such Purchase Deposits from the Purchase Deposits Account to the Senior Lender for application to the DIP Obligations and/or the Pre-Petition Obligations in accordance with the terms of this Final Order upon the earlier of: a) the consummation of the respective Purchase Order (whether by transfer of title to the respective product, by delivery of the product to the customer, or otherwise); and b) the customer's forfeiture of the Purchase Deposit for any reason, including, without limitation, breach of agreement between the customer and the Debtor with respect to the Purchase Order (each a "**Purchase Deposit Turnover Event**").  Notwithstanding the

foregoing, no Purchase Deposit shall constitute the Senior Lender's Cash Collateral unless and until the occurrence of a Purchase Deposit Turnover Event; provided, further, that, so long as no Purchase Deposit Turnover Event has occurred, the Debtor shall be authorized to refund the Purchase Deposit to the respective customer in accordance with the agreement between such customer and the Debtor no sooner than three (3) business days after giving written notice of any such refund to the Senior Lender.

(k)      In the regular course of its business, the Debtor proposes to accept good faith deposits from customers and other entities in connection with certain marketing events (each a "**Rally Deposit**").  The Debtor shall deposit any and all such Rally Deposits into an escrow account maintained by the Senior Lender (the "**Rally Deposits Account**").  The Rally Deposits Account shall at all times remain separate from any and all of the Debtor's other bank accounts, no funds other than Rally Deposits shall be deposited into the Rally Deposits Account, and the Debtor shall not spend, transfer, withdraw or otherwise use any funds contained in the Rally Deposits Account except as provided in this Paragraph 5(j).  Each Rally Deposit shall immediately become the Senior Lender's Cash Collateral (as defined below) and the Debtor shall immediately transfer any and all such Rally Deposits from the Rally Deposits Account to the Senior Lender for application to the DIP Obligations and/or the Pre-Petition Obligations in accordance with the terms of this Final Order upon the earlier of: a) the occurrence of the respective marketing event; and b) the date upon which any such Rally Deposit becomes non-refundable pursuant to the agreement under which the Rally Deposit was made (each a "**Rally Deposit Turnover Event**").  Notwithstanding the foregoing, no Rally Deposit shall constitute the Senior Lender's Cash Collateral unless and until the occurrence of a

Rally Deposit Turnover Event; provided, further, that, so long as no Rally Deposit Turnover Event has occurred, the Debtor shall be authorized to refund the Rally Deposit to the appropriate entity in accordance with the agreement between such entity and the Debtor no sooner than three (3) business days after giving written notice of any such refund to the Senior Lender.

6.      *DIP Financing Superpriority Claims.*

Pursuant to Section 364(c)(l) of the Bankruptcy Code, all of the Debtor's obligations, indebtedness and liabilities arising under or in respect of the DIP Financing, the DIP Credit Agreement, the Interim Order, and this Final Order (collectively, the "**DIP Obligations**") shall constitute obligations of the Debtor with priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims under Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 552, 726, 1114, or other similar section of the Bankruptcy Code (the "**DIP Obligation Superpriority Claim**"); provided, however, the DIP Obligation Superpriority Claim shall be subordinate to the Senior Lender Adequate Protection Claim.   Notwithstanding the foregoing, to the extent any payment by the Debtor, to any professional or otherwise, was made (i) in accordance with the DIP Budget and (ii) prior to the Termination Date, then Senior Lender may not seek disgorgement of the payment on account of the DIP Obligation Superpriority Claim.   Nothing contained in this Final Order shall be deemed to require Senior Lender to fund under the DIP Financing after an Event of Default.

7.      *DIP Liens*.   As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution by the

Debtor of additional security agreements or otherwise, and without recording any financing statement, mortgage or similar instrument or agreement, the following additional security interests and liens are hereby granted to the Senior Lender (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**DIP Collateral**").

(a)      First-Priority Lien on Cash Balances and Unencumbered Property. Pursuant to Section 364(c)(2) of the Bankruptcy Code, the Senior Lender is hereby granted a perfected security interest in and lien, senior to all other liens, claims, and interests other than the Senior Lender Adequate Protection Liens, upon any and all cash of the Debtor, each bank account of the Debtor and any investment of the funds contained therein, and any and all other pre-petition property and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "**Unencumbered Property**"), including, without limitation, cash, inventory, accounts, accounts receivable, other rights to payment or refund whether arising before or after the Petition Date, contracts, equipment, goods, general intangibles, documents, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, deposit accounts, investment property, letter of credit rights, fixtures, trade names, other intellectual property, capital stock of subsidiaries, and all proceeds of all the foregoing. Unencumbered Property shall, however, exclude the Debtor's claims, causes of action and recoveries under Sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code, but shall include any claims, causes of action or recoveries as to any fraudulent conveyances or

fraudulent transfers of Senior Lender Pre-Petition Collateral (collectively, the "**Avoidance Actions**").

(b)        Senior Lender's Priming Lien.    Pursuant to Section 364(d)(1) of the Bankruptcy Code, the Senior Lender is hereby granted a perfected, priming security interest in and lien upon all pre-petition and post-petition property of the Debtor including, without limitation, the Pre-Petition Collateral, DIP Collateral, Cash Collateral, inventory, commercial tort claims, accounts receivable, other rights to payment or refund, contracts, goods, equipment, general intangibles, documents, instruments, interests in leaseholds, real property, patents, copyrights, trademarks, trade names, deposit accounts, investment property, letter of credit rights, fixtures, other intellectual property, capital stock of subsidiaries or affiliates, and the proceeds of all the foregoing, that is subject to the Pre-Petition Liens. Such security interests and liens shall be senior in all respects to: (i) the Junior Creditor Pre-Petition Liens in the Senior Lender Pre-Petition Collateral and (ii) the Junior Creditor Adequate Protection Liens (as defined below) in the DIP Collateral, but shall, pursuant to Section 364(c)(3) of the Bankruptcy Code or otherwise, be subordinate to: (i) any Prior Liens; (ii) the Senior Lender Pre-Petition Liens in the Senior Lender Pre-Petition Collateral; (iii) the Senior Lender Adequate Protection Liens; (iv) any valid, perfected and unavoidable security interests in such property arising out of liens to which the liens of the Senior Lender become subject subsequent to the Petition Date solely as permitted by Section 546(b) of the Bankruptcy Code; and (v) the Junior Creditor Pre-Petition Lien in the Junior Lender Pre-Petition Real Property Collateral.

(c)        Liens Senior to Certain Other Liens.    The DIP Liens and the Adequate Protection Liens (as defined below) shall not be subject or subordinate to any

lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under Section 551 of the Bankruptcy Code which lien, but for such avoidance would not be senior or equal in priority to the liens granted to the Senior Lender hereunder.

(d)    Prevost.    Nothing contained in the Interim Order or this Final Order shall be deemed to affect or impair the rights of Prevost Car (US), Inc. ("**Prevost**") in any of the Debtor's assets or assets in the Debtor's possession, including, without limitation, the Pre-Petition Collateral.  Furthermore, no DIP Financing funds may be used in the conversion, build-out or improvement of any bus shell in which Prevost claims any interest unless there has first been (i) a further Order of this Court, after notice and a hearing, expressly addressing and approving such use of DIP Financing funds, or (ii) a signed agreement among the Debtor, the Senior Lender, the Junior Creditor and Prevost expressly addressing and approving such use of DIP Financing funds.

8.    *Protection of Senior Lender's Rights.*

(a)    So long as the Senior Lender's commitment to make advances under the DIP Credit Agreement shall not have been terminated, the Senior Lender shall take no action to foreclose upon the Senior Lender Pre-Petition Liens pursuant to the Existing Senior Credit Agreements, the Interim Order, this Final Order, or otherwise exercise remedies against the Senior Lender Pre-Petition Collateral or the DIP Collateral, except to the extent authorized by this Final Order or separate order of this Court; provided, however, the Senior Lender shall be entitled at all times prior to the termination of the DIP Financing to continue to receive the payments from the Debtor contemplated by the DIP Credit Agreement and Paragraph 10(A)(3) below.

(b) The automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Senior Lender to exercise all rights and remedies against the DIP Collateral and the Senior Lender Pre-Petition Collateral provided for in the DIP Credit Agreement and/or the Existing Senior Credit Agreements upon the occurrence of any Event of Default after the expiration of any applicable notice and cure period as required by the DIP Credit Agreement and the giving of four (4) business days' prior written notice to the Debtor, Junior Agent, the United States Trustee, and the Committee; provided, however, that such notice shall be delivered to counsel for the Debtor, the United States Trustee, and counsel for the Committee via either electronic mail or facsimile. In any hearing after the giving of the aforementioned notice, the only issue that may be raised by the Debtor in opposition thereto shall be whether, in fact, an Event of Default has occurred, and the Debtor hereby waives its right to seek to reimpose the automatic stay or obtain other injunctive relief, including, without limitation, under Section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Senior Lender as set forth in the Interim Order, this Final Order, the DIP Credit Agreement and/or the Existing Senior Credit Agreements.

(c) In no event shall the Senior Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or any collateral subject to any Senior Lender Pre-Petition Lien.

(d) The automatic stay is hereby further vacated and modified to allow Senior Lender to take possession of any Senior Lender Pre-Petition Proceeds that were not transferred to the Senior Lender pursuant to the Interim Order and to apply such

amounts to the Senior Lender Pre-Petition Debt, and the Debtor is hereby authorized and directed to take any and all action requested by the Senior Lender to facilitate the Senior Lender taking possession of such funds; provided, further, that any action taken by the Senior Lender and the Debtor with respect to the Senior Lender Pre-Petition Proceeds is hereby approved.

(e)      Except as otherwise provided in the DIP Credit Agreement, the Debtor's right to borrow under this Final Order and the DIP Credit Agreement or use Cash Collateral (as defined below), as provided in Paragraph 9 below, shall terminate automatically on the earlier of the Termination Date or upon the occurrence and continuation of an Event of Default following the expiration of any applicable cure period as required under the DIP Credit Agreement.   Additionally, the Senior Lender shall have no obligation to make any advances under the DIP Credit Agreement to pay any unfunded or underfunded item in the DIP Budget following the Termination Date or upon a termination due to the occurrence of an Event of Default.

(f)      Nothing herein shall preclude the Senior Lender from credit bidding the Senior Lender Pre-Petition Debt and the DIP Obligations pursuant to Section 363(k) of the Bankruptcy Code at any sale of the Pre-Petition Collateral and/or the DIP Collateral.

9.      *Use of Cash Collateral.*  All cash and investment securities of the Debtor, including any proceeds of the Senior Lender Pre-Petition Collateral (including funds on deposit at any bank as of the Petition Date) are Cash Collateral of the Senior Lender within the meaning of Section 363(a) of the Bankruptcy Code.   All such cash and investment securities are referred to herein as "Cash Collateral."  Except as otherwise set

forth herein and in the DIP Credit Agreement, the Debtor is hereby authorized to use all Cash Collateral of the Senior Lender in servicing the DIP Financing and making payments on the Senior Lender Pre-Petition Debt as contemplated herein, by the Final Order upon approval, and by the DIP Credit Agreement, provided that the Senior Lender is granted and receives adequate protection as hereinafter set forth.

10.    *Adequate Protection.*  The Senior Lender and Junior Creditor are hereby granted the following adequate protection:

A.    Senior Lender Adequate Protection.  Until the indefeasible repayment in full in cash of the Senior Lender Pre-Petition Debt, as adequate protection for the Senior Lender's interest in the Pre-Petition Collateral, the Senior Lender is hereby granted the following:

1.    Replacement Liens.  Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Senior Lender, is hereby granted by Debtor continuing valid, binding, enforceable and perfected, liens and security interests in and on all of the DIP Collateral (the "**Senior Lender Adequate Protection Liens**") to secure payment of the Senior Lender Adequate Protection Obligations (as defined below).  The Senior Lender Adequate Protection Liens shall (a) be subordinate only to the Prior Liens; and (b) be senior and superior to: (i) the Junior Creditor Adequate Protection Liens; and (ii) the DIP Liens.  The Senior Lender Adequate Protection Liens shall be deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination, impairment or avoidance, for all purposes in the Case and any subsequent or successor case of the Debtor (any such case shall be referred to as a "**Successor Case**").  Except as described in clause (a) above, no other liens or security interests, whether for adequate protection or otherwise, shall be senior or equal to or pari passu with the

Senior Lender Adequate Protection Liens in the Case or any Successor Case without the prior written consent of the Senior Lender (which consent may be withheld in Senior Lender's sole discretion).

2.     <u>Senior Lender Adequate Protection Claim</u>.  Pursuant to section 507(b) of the Bankruptcy Code, the Senior Lender shall have an allowed super-priority administrative expense claim (the "**Senior Lender Adequate Protection Claim**") against the Debtor and its estate in an amount not to exceed the Senior Lender Adequate Protection Obligations.  The Senior Lender Adequate Protection Claim shall be senior and superior to the Junior Creditor Adequate Protection Claim and the Junior Creditor Adequate Protection Lien.  No cost or expense of administration under any provision of the Bankruptcy Code (whether incurred in the Case or any Successor Case, whether for adequate protection, the lack of, or failure to provide, adequate protection, or otherwise), shall be senior to, equal to, or <u>pari</u> <u>passu</u> with, the Senior Lender Adequate Protection Claim.

3.     <u>Current Payment</u>.  As further adequate protection, and without limiting any rights of the Senior Lender under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Senior Lender to the entry of this Final Order and the Debtor's consensual use of Cash Collateral as provided herein, the Debtor shall, on upon the entry of this Final Order and on a monthly basis thereafter, pay or reimburse the Senior Lender for any and all of its accrued and past-due interest, fees, costs, expenses and charges payable under the Existing Senior Lender Credit Agreements and the DIP Credit Agreement, including without limitation, the reasonable attorneys' and other fees and expenses of the Senior Lender, whether accrued pre-petition or post-petition, all without further notice, motion or

application to, order of, or hearing before, this Court within ten (10) days after request for such payment is made.

        4.    <u>Senior Lender Adequate Protection Obligations</u>.  The Senior Lender Adequate Protection Liens and Senior Lender Adequate Protection Claim shall secure the payment of the Senior Lender Pre-Petition Debt in an amount equal to any diminution in the value of the Senior Lender's interests in the Pre-Petition Collateral from and after the Petition Date (the amount of such diminution, the "**Senior Lender Adequate Protection Obligations**") including, without limitation, any such diminution resulting from the following: (i) the use by the Debtor of the Pre-Petition Collateral, including, without limitation, the Cash Collateral, (ii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code or (iii) the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Pre-Petition Collateral or otherwise.

    B.    <u>Junior Creditor Adequate Protection</u>.  Until the indefeasible repayment in full in cash of the Junior Creditor Pre-Petition Debt, as adequate protection for Junior Agent's interest in the Pre-Petition Collateral, Junior Agent is hereby granted the following; provided, however, none of the following provisions shall be deemed to improve the Junior Agent's pre-petition interest with respect to the Pre-Petition Collateral or any of the DIP Collateral:

        1.    <u>Replacement Liens</u>.  Pursuant to sections 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, Junior Agent, for its benefit and the benefit of the Junior Lenders, is hereby granted by the Debtor continuing valid, binding, enforceable and perfected, liens and security interests in and on all of the DIP Collateral (the "**Junior Creditor Adequate Protection Liens**"; collectively, the Senior Lender Adequate Protection Liens and the Junior Creditor Adequate

Protection Liens shall be referred to as the "**Adequate Protection Liens**") to secure payment of the Junior Creditor Adequate Protection Obligations (as defined below).  The Junior Creditor Adequate Protection Liens shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the Senior Lender Adequate Protection Liens under this Final Order, except that such Junior Creditor Adequate Protection Liens shall be junior and subordinate to the Senior Lender Pre-Petition Liens in the Senior Lender's Pre-Petition Collateral, the Senior Lender Adequate Protection Liens, and the DIP Liens.

2.      <u>Adequate Protection Junior Claim</u>.  Pursuant to section 507(b) of the Bankruptcy Code, Junior Agent, for itself and for the benefit of the Junior Lenders, shall have an allowed super-priority administrative expense claim (the "**Junior Creditor Adequate Protection Claim**") against the Debtor and its estate in an amount not to exceed the amount of the Junior Creditor Adequate Protection Obligations (as defined below).  The Junior Creditor Adequate Protection Claim shall be entitled to the same rights, priorities, benefits and protections granted to or conferred upon the Senior Lender Adequate Protection Claim under this Final Order, except that such Junior Creditor Adequate Protection Claim shall be junior and subordinate to the Senior Lender Adequate Protection Claim.

3.      <u>Adequate Protection Junior Obligations</u>.   The Junior Creditor Adequate Protection Liens and Junior Creditor Adequate Protection Claim shall secure the payment of the Junior Creditor Pre-Petition Debt in an amount equal to any diminution in the value of Junior Agent's interests in the Pre-Petition Collateral from and after the Petition Date (the amount of such diminution, the "**Junior Creditor Adequate Protection Obligations**") including, without limitation, any such diminution resulting from the following: (i) the use by the Debtor of the Pre-Petition Collateral, including, without limitation, the Cash

Collateral, (ii) the imposition of the DIP Liens, which will prime the Junior Creditor Pre-Petition Liens in the Senior Lender Pre-Petition Collateral, (iii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code or (iv) the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Pre-Petition Collateral or otherwise.

11.     *Proceeds of Collateral*.  The proceeds of the DIP Collateral and the Pre-Petition Collateral shall be disbursed as follows:

A.     <u>Senior Lender Pre-Petition Collateral</u>.  Proceeds of the Senior Lender Pre-Petition Collateral shall be disbursed by the Debtor in the following priority: (i) first, to the Senior Lender for application towards the Senior Lender Pre-Petition Debt; (ii) second, to the Senior Lender for application towards the DIP Obligations; (iii) third, to Junior Agent for application towards the Junior Creditor Pre-Petition Debt; and (iv) fourth, to all other creditors of the Debtor in accordance with the Bankruptcy Code.

B.     <u>Junior Creditor Pre-Petition Real Property Collateral</u>.  Proceeds of the Junior Creditor Pre-Petition Real Property Collateral shall be disbursed by the Debtor in the following priority: (i) first, to Junior Agent for application towards the Junior Creditor Pre-Petition Debt; (ii) second, to the Senior Lender for application towards the Senior Lender Pre-Petition Debt; (iii) third, to the Senior Lender for application towards the DIP Obligations; and (iv) fourth, to all other creditors of the Debtor in accordance with the Bankruptcy Code.

C.     <u>DIP Collateral</u>.  Proceeds of the DIP Collateral that does not constitute Senior Lender Pre-Petition Collateral or Junior Creditor Pre-Petition Real Property Collateral shall be disbursed by the Debtor in the following priority: (i) first, to the Senior Lender for application towards the Senior Lender Adequate Protection Obligations; (ii)

second, to the Senior Lender for application towards the DIP Obligations; (iii) third, to Junior Agent for application towards the Junior Creditor Adequate Protection Obligations; and (iv) fourth, to all other creditors of the Debtor in accordance with the Bankruptcy Code.

12.    *Reservation of Rights of Senior Lender.*    Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including Section 506(b) thereof, the Court finds that the adequate protection provided for herein is reasonable and sufficient to protect the security interests of the Senior Lender and Junior Agent in the Pre-Petition Collateral.  However, this Final Order shall not preclude the Senior Lender or Junior Creditor from seeking further or different adequate protection.

13.    *Perfection of DIP Liens and Adequate Protection Liens.*    The Senior Lender and Junior Agent are hereby authorized to, but shall not be required to, file or record financing statements, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the security interests and liens granted to them pursuant to the Interim Order and/or this Final Order.  Whether or not the Senior Lender or Junior Agent shall, in their sole discretion, choose to file such financing statements, notices of lien or similar instruments or otherwise confirm perfection of such security interests and liens, the liens and security interests granted herein shall be deemed valid and perfected at the time and on the date of entry of the Interim Order.  The Debtor, upon the request of the Senior Lender or Junior Agent, without any further consent of any party, is authorized to take, execute and deliver such instruments to enable the Senior

Lender to further perfect, preserve and enforce the security interests and liens granted to such party by the Interim Order and/or this Final Order.

14. *Preservation of Liens and Rights Granted Under the Interim Order.*

(a) No claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the Senior Lender shall be granted while any portion of the DIP Obligations (or any refinancing thereof), the commitments thereunder, the Senior Lender Pre-Petition Debt, or the Senior Lender Adequate Protection Obligations remain outstanding. The security interests and liens granted to the Senior Lender or Junior Agent hereunder shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code which lien, but for such avoidance would not be senior or equal in priority to the liens granted to the Senior Lender or Junior Agent hereunder, and (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under Section 364(d) of the Bankruptcy Code or otherwise.

(b) Unless all obligations and indebtedness owing to the Senior Lender (i) under the DIP Credit Agreement, or (ii) under the Existing Senior Credit Agreements, shall theretofore have been paid in full or in the manner agreed to in connection with any plan of reorganization, the Debtor shall not seek, and it shall constitute an Event of Default if the Debtor seeks, or if there is entered, an order dismissing the Case. If an order dismissing the Case under Section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order, to the extent permissible under applicable law, shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) DIP Liens, Adequate Protection Liens, and other security interests and replacement liens granted to

the Senior Lender and Junior Agent pursuant to the Interim Order and this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations, Senior Lender Adequate Protection Obligations, Junior Creditor Adequate Protection Obligations, Senior Lender Pre-Petition Debt, and Junior Creditor Pre-Petition Debt shall have been paid and satisfied in full in cash (and that such DIP Liens, Adequate Protection Liens and other security interests and replacement liens, shall, notwithstanding such dismissal, remain binding on all parties in interest), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the liens and security interests referred to in (i) above.

(c)       If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations, Senior Lender Adequate Protection Obligations, and Junior Creditor Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Senior Lender of the effective date of such reversal, stay, modification or vacation or (ii) the validity and enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement, the Interim Order, and this Final Order with respect to any DIP Obligation, Senior Lender Adequate Protection Obligation, or Junior Creditor Adequate Protection Obligation. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral or DIP Obligation incurred by the Debtor prior to the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Final Order, and the Senior Lender and Junior Agent shall be entitled to all the rights, remedies, privileges and benefits granted in this Final Order and/or

pursuant to the DIP Credit Agreement with respect to all uses of Cash Collateral, the DIP Obligations, the Senior Lender Adequate Protection Obligations, and the Junior Creditor Adequate Protection Obligations.

(d)     The obligations of the Debtor under the Interim Order, this Final Order and the DIP Credit Agreement shall not be discharged by the entry of an order confirming a plan of reorganization in the Case and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived such discharge.

(e)     In no event shall any person or entity who pays (or, through the extension of credit to the Debtor, causes to be paid) any of the DIP Financing or other obligations under the DIP Credit Agreement or the Existing Senior Credit Agreements be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens or security interests granted to or in favor of, or conferred upon, Senior Lender by the terms of the DIP Credit Agreement, the Existing Senior Credit Agreements, the Interim Order, this Final Order or otherwise, until such time as all of the DIP Financing and other obligations under the DIP Credit Agreement and Existing Senior Credit Agreements are satisfied and paid in full.

(f)     Debtor shall not file any pleading in this Court, or any other court of competent jurisdiction, challenging the validity of or seeking to modify, alter, amend, or vacate any provision of the Interim Order, this Final Order, or the DIP Credit Agreement without the written consent of the Senior Lender.

15.     *Effect of Stipulations on Third Parties.*  The stipulations and admissions contained in the Interim Order and this Final Order, including, without limitation, those in Paragraph 3 of this Final Order, shall be immediately binding on the Debtor, and

thereafter binding upon all other parties in interest, including any Committee, unless (a) the Committee or any other party in interest has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, inter alia, those in Paragraph 16 below) by no later than May 30, 2009 (the "**Challenge Deadline**") (or such later date as has been agreed in writing to by the Senior Lender, or ordered by this Court after notice and a hearing), (i) challenging the validity, enforceability, priority or extent of the Senior Lender Pre-Petition Debt or the Senior Lender Pre-Petition Liens or (ii) otherwise asserting any claims or causes of action against the Senior Lender, and (b) there is a final order or judgment in favor of the Committee in any such timely filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is timely filed by the Committee or another party in interest other than the Debtor by the Challenge Deadline, (x) the Senior Lender Pre-Petition Debt, the Senior Lender Pre-Petition Liens and all related obligations of the Debtor shall constitute allowed claims, not subject to counterclaim, offset, subordination, recharacterization, defense or avoidance, for all purposes in the Case and any subsequent Chapter 7 case, (y) the Pre-Petition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, not subject to recharacterization, subordination or avoidance, and (z) the Senior Lender Pre-Petition Debt and Senior Lender Pre-Petition Liens shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor(s) thereto. If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in Paragraph 3 shall nonetheless remain binding and preclusive (as provided in the second sentence of this Paragraph) except to the extent that such findings and

admissions were successfully challenged in such adversary proceeding or contested matter.

16.    *Limitation on Use of Financing Proceeds and Collateral.* Notwithstanding anything herein to the contrary, no borrowings or proceeds from the DIP Credit Agreement, the Cash Collateral, the DIP Collateral, or the Senior Lender's Pre-Petition Collateral may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Credit Agreement or the Existing Senior Credit Agreements, or the liens or claims granted under the Interim Order, this Final Order, the DIP Credit Agreement or the Existing Senior Credit Agreements (including without limitation, the DIP Liens and the Senior Lender Pre-Petition Liens), (b) assert any claims, counterclaims, defenses or causes of action against the Senior Lender or its affiliates, (c) prevent, hinder or otherwise delay the Senior Lender's assertion, enforcement or realization on the Cash Collateral, the Pre-Petition Collateral or the DIP Collateral in accordance with the DIP Credit Agreement, the Existing Senior Credit Agreements, the Interim Order, or this Final Order, or (d) seek to modify any of the rights granted to the Senior Lender hereunder, under the DIP Credit Agreement, or under the Existing Senior Credit Agreements, in each of the foregoing cases without the Senior Lender's prior written consent.

17.    *No Surcharge Without Consent.* As a condition to and as consideration for the obligation of the Senior Lender to provide and continue the DIP Financing, no costs or expenses of any kind incurred in the Case by any party may be imposed upon the Senior Lender or any of the DIP Collateral or the Pre-Petition Collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without the Senior Lender's prior

written consent, which the Senior Lender may grant or deny in its sole and absolute discretion, and that no such consent be implied or imposed based on any action or inaction of the Senior Lender.

18.    *Limited Authorization to Borrow and Use Post-Petition Financing Proceeds Pending Final Hearing*.  Notwithstanding anything contained in the Interim Order or this Final Order to the contrary, the Debtor is authorized to borrow and use proceeds of the DIP Financing (but not proceeds of any of the DIP Collateral or the Senior Lender's Pre-Petition Collateral without the prior written consent of the Senior Lender) solely for the purposes authorized by the DIP Credit Agreement, the DIP Budget and this Final Order.  The Senior Lender has no obligation, and shall not be required, to provide any additional post-petition financing or perform any other obligations under the DIP Credit Agreement except as set forth in this Final Order.   As a result of the preliminary authorization contained herein, no transfer of property of Debtor's estate made in accordance with the provisions of the Interim Order, this Final Order or the DIP Credit Agreement shall be avoidable as an unauthorized transfer under Section 549 of the Bankruptcy Code, including, without limitation the transfer of the Senior Lender Pre-Petition Proceeds to the Senior Lender.

19.    *No Use of Proceeds from DIP Collateral*.  The Debtor may not use proceeds of any of the DIP Collateral (as opposed to advances of the DIP Financing) without the prior written consent of the Senior Lender, which the Senior Lender may grant or deny in its absolute discretion.  Unless otherwise directed by the Senior Lender or as required by the DIP Credit Agreement, the Debtor shall promptly deliver to the Senior Lender, as received, all proceeds or payments constituting proceeds of the DIP

Collateral (including any proceeds currently in their possession) in which the Senior Lender holds a first-priority security interest for application in accordance with the terms of the DIP Credit Agreement and this Final Order.

20.    *No Additional Duty to Lend or Extend Term.*  Nothing contained in the Interim Order or this Final Order shall be construed to require the Senior Lender to make any loan or extension of credit to or for the benefit of the Debtor or its estate other than as expressly provided in this Final Order, the DIP Budget or the DIP Credit Agreement, and any and all loans and extensions of credit that the Senior Lender shall elect to make shall be in such amounts and made at such times as the Senior Lender may determine the Debtor is allowed pursuant to the DIP Credit Agreement.  Notwithstanding the authority and approvals provided for herein, the Senior Lender may, in its sole and absolute discretion, terminate or extend the term of (or may decline to terminate or extend the term of) the DIP Financing as provided under the DIP Credit Agreement at any time in accordance with the terms thereof and may waive (or in its absolute discretion, withhold any waiver of) any event of default under the DIP Credit Agreement or this Final Order, all without further notice or order of this Court.

21.    *Payment; No Setoff.*  All of the Debtor's obligations in connection with the DIP Financing, the Interim Order, and this Final Order shall be due and payable, and shall be paid, as and when provided in the DIP Credit Agreement.  In no event shall the Debtor be authorized to offset any amount due or allegedly due or owing by the Senior Lender to the Debtor against any of the obligations under the DIP Credit Agreement or the Existing Senior Credit Agreements without the Senior Lender's prior written consent, which the Senior Lender may grant or deny in its sole and absolute discretion.

22. *Debtor's Obligations and Transfers to Senior Lender Not Avoidable.* None of the Debtor's obligations, grants of security interests, liens or superpriority claim status or payments or other transfers to the Senior Lender under the DIP Credit Agreement or to the Senior Lender and/or Junior Agent under the Interim Order and/or this Final Order shall be avoidable or recoverable as a fraudulent, ultra vires, or unlawful transfer under any applicable law, including, without limitation, the Bankruptcy Code.

23. *Amendments or Modifications.* The Debtor and the Senior Lender are hereby authorized to amend or modify the DIP Credit Agreement, in accordance with the terms thereof, without further order of this Court on the following conditions: (i) the amendment or modification must not constitute a material change to the terms of the DIP Credit Agreement (and, for purposes hereof, a "material change" shall mean a change that operates to increase the rate of interest other than as currently provided in the DIP Credit Agreement, add additional specific events of default, increase the aggregate amount of the DIP Financing above the Maximum Line Amount (as defined in the DIP Credit Agreement) or enlarge the nature and extent of remedies available to the Senior Lender following an Event of Default), and (ii) copies of the amendment or modification must be served by the Debtor on the Senior Lender, Junior Agent, the Committee, the United States Trustee, and any other party as the Court may direct. Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court, upon prior notice and opportunity for hearing as shall be appropriate under the circumstances warranting the material change; provided, however, any such amendment or modification may be deemed effective *nunc pro tunc* to the date the Senior Lender and Debtor agreed thereto. Notwithstanding anything contained herein, Senior Lender, in its

sole discretion, may consent to any request by Debtor to modify the DIP Budget; provided, however, any such request from the Debtor and consent from the Senior Lender must be in writing to be effective.

24.    *Events of Default*.    Upon or after the occurrence of (i) the Termination Date, (ii) an Event of Default under the DIP Credit Agreement, and/or if (iii) the Debtor fails to duly and punctually observe, perform or discharge any obligation or duty imposed upon it by the Interim Order or this Final Order, including without limitation, the making of the Adequate Protection Payments in the manner required by Paragraph 10(A)(3) above (each, an "**Event of Default**"), then, and, in any such event, the Senior Lender shall be fully authorized, in its sole discretion, to terminate the DIP Financing, to demand payment and satisfaction of all obligations under the DIP Credit Agreement, the Interim Order and this Final Order, and to shall be entitled to relief from the automatic stay in accordance with Paragraph 8(b) of this Final Order.    In no event shall the Debtor be authorized to use any proceeds of DIP Collateral or any proceeds of the DIP Financing to pay any cost or expenses of administration in this Case or in any superseding Chapter 7 case after the occurrence of an Event of Default, until such time as all of the obligations under the DIP Credit Agreement and the Existing Senior Credit Agreements are paid, performed and satisfied in full.

25.    *Inspection Rights*    Representatives of the Senior Lender shall be authorized to visit and remain on any of the business premises of the Debtor at any time or times to inspect any DIP Collateral, the Pre-Petition Collateral or other assets of the Debtor to verify or to obtain supporting details concerning the financial information to be

provided to the Senior Lender hereunder or under the DIP Credit Agreement, including without limitation, compliance with the DIP Budget.

26.    *Survivability; Binding Effect*.  No reorganization plan or other disposition of the property of the estate proposed by the Debtor, any insider of the Debtor, or any third party shall modify or abrogate any of the rights and benefits afforded to the Senior Lender by the Interim Order, this Final Order or the DIP Credit Agreement without the prior written consent of the Senior Lender, which may grant or deny such consent in its sole and absolute discretion.  The provisions of this Final Order shall be binding upon the Debtor and its buyers, successors and assigns.  In the event that this Case is dismissed, superseded, substantively consolidated with another Chapter 11 case or entity, or the Debtor merges into any other entity under any plan of reorganization, neither the entry of this Final Order, the dismissal of this Case, nor such consolidation or merger shall affect the rights of the Senior Lender under this Final Order or the DIP Credit Agreement, and all of the Senior Lender's rights and remedies thereunder and hereunder shall remain in full force and effect.  As a condition to the obligation of the Senior Lender to provide and continue the DIP Financing after the Final Hearing, the provisions of this Final Order shall survive and be binding upon any successor trustee appointed in the Case or any Chapter 7 case to which the Case may subsequently be converted.

27.    *Remedies Cumulative*.  The rights, remedies, powers and privileges conferred upon the Senior Lender pursuant to this Final Order shall be in addition to and cumulative with those contained in the DIP Credit Agreement and the Existing Senior Credit Agreements.  Nothing in this Final Order is intended to limit, restrict, eliminate or

modify any rights or remedies provided to the Senior Lender under the DIP Credit Agreement or the Existing Senior Credit Agreements.

28.     *Maintenance of Lockbox Agreement*.   Debtor shall be subject to all the terms and provisions of the existing pre-Petition Date dominion account control agreements and lockboxes for purposes of the DIP Financing and shall be authorized and directed to continue in effect their existing cash management system by causing all proceeds of both the Pre-Petition Collateral and DIP Collateral to be remitted or deposited into the existing lockbox account pursuant to said agreements.

29.     *No Admissions or Waiver*.   Nothing in the Interim Order or this Final Order shall be deemed to be a waiver by the Senior Lender or Junior Agent of their right to request any other relief or additional and further protection of its interests in any property of the Debtor or property of the estate, to move for relief from the automatic stay with respect to the Senior Lender Adequate Protection Obligations or the Junior Creditor Adequate Protection Obligations or the enforcement of the Pre-Petition Liens on the Pre-Petition Collateral, to seek the appointment of a trustee or examiner in the Case or the dismissal of the Case, or to request any other relief in this case, nor shall anything in the Interim Order, this Final Order, the DIP Credit Agreement, the Existing Senior Credit Agreements, or the Existing Junior Credit Agreements constitute an admission by the Senior Lender or Junior Agent of the quantity, quality or value of the DIP Collateral or Pre-Petition Collateral or constitute a finding of adequate protection with respect to the interest of the Senior Lender or Junior Agent in any of the DIP Collateral or Pre-Petition Collateral.   The Senior Lender and Junior Agent shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Section 507(b) of the

Bankruptcy Code in connection with any use, sale or other disposition of any of the DIP Collateral or Pre-Petition Collateral, to the extent that the superpriority claim status afforded by the Interim Order or this Final Order to the Senior Lender's and Junior Agent's interests in any DIP Collateral or Pre-Petition Collateral proves to be inadequate.

30.    *Release of Claims.* The Debtor hereby (i) releases and discharges the Senior Lender, together with its respective affiliates, agents, attorneys, members, officers, directors and employees (collectively, the "**Protected Parties**") from any and all claims and causes of action arising out, based upon or related to, in whole or in part, Existing Senior Credit Agreements, any aspect of the pre-petition relationship between, or among, the Protected Parties and the Debtor or any other acts or omissions of the Protected Parties in connection with any of the Existing Senior Credit Agreements or its pre-petition relationship with the Debtor, including, without limitation, any avoidance action available under Chapter 5 of the Bankruptcy Code (or under Section 502(d) of the Bankruptcy Code); (ii) waive any and all claims and/or defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, first priority, enforceability and avoidability (under the Bankruptcy Code or otherwise) of the indebtedness under the Existing Senior Credit Agreements and the security interests in and liens on the collateral securing such indebtedness; and (iii) agree, without further Court order and without the need for filing of any proof of claim, to the allowance of the pre-petition claims of the Senior Lender pursuant to Sections 502 and 506 of the Bankruptcy Code on account of such indebtedness as fully secured claims for principal, plus accrued pre-petition and post-petition interest, fees, expenses and other amounts chargeable under the Existing Senior Credit Agreements.

31.  *Order Governs.*  In the event of any inconsistency between the provisions of the Interim Order, the DIP Credit Agreement, and this Final Order the provisions of this Final Order shall govern.

32.  *Binding Effect; Successors and Assigns.*  The DIP Credit Agreement and the provisions of this Final Order shall be binding upon all parties in interest in this Case, including, without limitation, the Senior Lender, Junior Agent and the Debtor and its successors and assigns (including any Chapter 7 or Chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor) and shall inure to the benefit of the Senior Lender, the Debtor and its successors and assigns.

33.  *Good Faith.*  Each of the Senior Lender, the Junior Lenders, the Committee, the Debtor, and the United States Trustee shall act with good faith with respect to all matters contained in this Final Order.

# # #

Presented by:

MUHLHEIM BOYD, LLP

By:  /s/ Loren S. Scott
     Loren S. Scott, OSB #024502
     Of Attorneys for Wells Fargo Bank, N.A.


Cc:  **Via Electronic Mail**

- BRIAN M BORN    bborn@turnbullborn.com
- BRADLEY S COPELAND    bcopeland@agsprp.com, bdavis@agsprp.com
- MICHAEL P COTTER    mcotter@vanblk.com, kjerald@vanblk.com
- E RICHARD DRESSEL    rick.dressel@flastergreenberg.com,
  erika.letteri@flastergreenberg.com
- CODY HOESLY    choesly@larkinsvacura.com, lniknabard@larkinsvacura.com
- THOMAS K HOOPER    bmail@hooplaw.com, csayles@hooplaw.com
- THOMAS A HUNTSBERGER    tahunts@callatg.com
- P REBECCA KAMITSUKA
- MICHAEL P KEARNEY    mpk@kearneyatlaw.com, mholley@agsprp.com
- WILLIAM L LARKINS    wlarkins@larkinsvacura.com, phollands@larkinsvacura.com
- MEGAN I LIVERMORE    megan@oregonlegalteam.com, karen@oregonlegalteam.com

- CARTER M MANN    mannc@fosterpdx.com, erwil@fosterpdx.com
- DAVID B MILLS    davidbmills@comcast.net, davidbmills@cs.com
- WILSON C MUHLHEIM    ecf@mb-lawoffice.com
- RHONDA L NELSON    rln@severson.com, vja@severson.com
- LEE C NUSICH    nusichl@lanepowell.com, barkerd@lanepowell.com;docketing-pdx@lanepowell.com
- R SCOTT PALMER    rspalmer@wlrlaw.com, cpivoda@wlrlaw.com;lsharkey@wlrlaw.com
- SAMUEL R PRICE    sprice@donahoeyoung.com
- ROBERT S RUSSELL    russell@gleaveslaw.com, kirsten@gleaveslaw.com
- BRANDY A SARGENT    basargent@stoel.com, docketclerk@stoel.com;pdschreiber@stoel.com
- DOUGLAS R SCHULTZ    schultz@gleaveslaw.com, kirsten@gleaveslaw.com
- LOREN S SCOTT    ecf@mb-lawoffice.com
- DONALD R SLAYTON    dslayton@scslaw.org, scranston@scslaw.org
- US Trustee, Eugene    USTPRegion18.EG.ECF@usdoj.gov
- PATRICK W WADE    hhecfb@hershnerhunter.com
- MINDY L WITTKOP    mwittkop@dgnmw.com, jbellman@dgnmw.com

**VIA MANUAL SERVICE**

ASE Supply Inc
Attn Brent Grabinger
POB 30599
Portland, OR 97294-3599

Mark Andersen
Country Coach LLC
POB 400
POB 400, OR 97448

Kaitlyn Bolduc
c/o KEZI - TV
2975 Chad Dr
Eugene, OR 97408

Buddy Gregg Motor Homes Inc
c/o Fred VanDenBerg
11730 Snyder Road
Knoxville, TN 37932

Jeff Butler
c/o Country Coach LLC
POB 400
Junction City, OR 97448

JOHN J. DYER
3290 Northside Pkwy #400
Atlanta, GA 30327

DaimlerChrysler Ins Co/Dealerguard
c/o Melinda A Davis Esq
Denenberg Tuffley PLLC
28411 Northwestern Hwy #600
Southfield, MI 48034

Farwest Steel Fabrication Co.
c/o C.J. Lewis
POB 889
Eugene, OR 97440

Brendan Gardiner
100 N.E. Adams Street
Peoria, IL 61629

HWH Corporation
c/o Dan Boddicker
2096 Moscow Rd
Moscow, ID 52760

Debbie Hollembaek
c/o Country Coach LLC
POB 400
Junction City, OR 97448

James Howard
c/o Country Coach LLC
POB 400
Junction City, OR 97448

Matthew Howard
c/o Country Coach LLC
POB 400
Junction City, OR 97448

Lawrence B. Hunt
Hunt & Associates PC
101 SW Main St.
Ste. 805
Portland, OR 97204

IRS
Attn: Susan Anderson
300 Country Club Rd #260
Eugene, OR 97401

DAVID B. KURZWEIL
3290 Northside Pkwy #400
Atlanta, GA 30327

Peggie Kegel
c/o Country Coach LLC
POB 400
Junction City, OR 97448

DAVID B. LEVANT
STOEL RIVES LLP
600 UNIVERSITY ST #3600
SEATTLE, WA 98101

Lazy Days RV Supercenter
c/o Randall Lay
6130 Lazy Days Blvd
Seffner, FL 33584-2968

Charles Liles
Wells Fargo Business Credit
MAC N2642-020
400 Northridge Rd #600
Atlanta, GA 30350

dba The Art of Glass Lundy-Medlin, Inc.
790 Blair Blvd
Eugene, OR 97402

Bruce Macintyre
Of Attorneys for Pacific Power and Light
1201 3rd Ave #4800
Seattle, WA 98101-3099

Rachael McDonald
c/o KLCC Radio
4000 E 30th Ave
Eugene, OR 97405

Steven Montgomery
P. O. Box 4586
Springfield, MO 65808

Ed Morgan
c/o Guaranty RV
20 Hwy 99 S
Junction City, OR 97448

Wilson Muhlheim
88 E Broadway
Eugene, OR 97401

Gary Obermiller
c/o Country Coach LLC
POB 400
Junction City, OR 97448

Pacific Source Health Plan
c/o Kristin Kernutt
P. O. Box 7068
Eugene, OR 97401

Frank Sutton
c/o Country Coach LLC
POB 400
Junction City, OR 97448

The Bill Benetreu Company
c/o Dawn R. Kosinski
1635 N 30th St
Springfield, OR 97478

WESCO Distribution Inc
221 S 10th St
Lemoyne, PA 17043

Patrick Weist
c/o Country Coach LLC
POB 400
Junction City, OR 97448

Paul Williams
c/o Guaranty RV
20 Hwy 99 S
Junction City, OR 97448

**EXHIBIT "A"**

**INITIAL DIP BUDGET**

**Country Coach LLC**

Cash Flow Forcast

*dollars in thousands*

Projected Week Ending

| | 4-3-09 | 4-10-09 | 4-17-09 | 4-24-09 | 5-1-09 | 5-8-09 | 5-15-09 | 5-22-09 | 5-29-09 | 6-5-09 | 6-12-09 | 6-19-09 | 6-26-09 | 7-3-09 | 7-10-09 | 7-17-09 | 7-24-09 | 7-31-09 | 8-7-09 | 8-14-09 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week # | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| **Production Schedule** | | | | | | | | | | | | | | | | | | | | |
| MH # Weeks in Inventory | | | | | | | | | | | | | | | | | | | | |
| # MH Produced | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| # Bus Produced | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Non-Used Motor Home Inventory | 10 | 10 | 10 | 10 | 11 | 10 | 10 | 9 | 8 | 7 | 7 | 6 | 6 | 5 | 5 | 4 | 4 | 3 | 3 | 3 |
| **Sales Schedule** | | | | | | | | | | | | | | | | | | | | |
| MH Sales 2008/2009 | 0 | 0 | 1 | 1 | 1 | 0 | 1 | 0 | 1 | 1 | 1 | 0 | 1 | 0 | 1 | 0 | 1 | 0 | 1 | 0 |
| MH Sales 2010 | | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Total New Sales | 0 | 0 | 1 | 1 | 1 | 2 | | 1 | | 2 | | 1 | | 2 | | 1 | | 2 | | 1 |
| Cummulative Number of Units sold | | 0 | 1 | 2 | | | | 13 | 14 | 16 | 17 | 19 | | 21 | 22 | 23 | | | | |
| **Operating Cash Inflows** | | | | | | | | | | | | | | | | | | | | |
| Cash received from customers | $ - | - | 405.6 | 405.6 | - | 878.8 | 473.2 | 878.8 | 1,643.2 | 878.8 | 473.2 | 878.8 | 473.2 | 878.8 | 473.2 | 878.8 | 522.0 | 880.1 | 474.5 | 474.5 |
| Total Operating Inflows | | | 405.6 | 405.6 | | 878.8 | 473.2 | 878.8 | 1,643.2 | 878.8 | 473.2 | 878.8 | 473.2 | 878.8 | 473.2 | 878.8 | 522.0 | 880.1 | 474.5 | 474.5 |
| **Operating Cash Outflows** | | | | | | | | | | | | | | | | | | | | |
| Inventory A/P Payments | $ - | 370.4 | 379.7 | 262.5 | 198.3 | 254.9 | 50.3 | 206.6 | 159.6 | 125.2 | 135.0 | 152.5 | 110.8 | 152.1 | 230.8 | 201.7 | 160.1 | 97.4 | 77.3 | 69.4 |
| 2009 Raw Material Reduction Per Week | | (11.7) | (11.7) | (11.7) | (11.7) | (11.7) | (11.7) | (11.7) | (11.7) | (11.7) | (11.7) | (11.7) | (26.7) | (326.7) | (26.7) | (26.7) | (26.7) | (26.7) | (26.7) | (26.7) |
| Bus Shell | | | | | | | | | | | | | | | | | | | | |
| Total Material Purchases | - | 370.4 | 368.0 | 250.8 | 186.6 | 243.2 | 38.6 | 194.9 | 147.9 | 113.5 | 123.3 | 140.8 | 84.1 | (174.6) | 204.1 | 175.0 | 133.4 | 70.7 | 50.6 | 42.7 |
| Purchase of New Model & Wholesale Trades | - | | | | | | | | | | | | | | | | | | | |
| Payroll manufacturing direct | - | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 |
| Payroll Taxes, Benefits, and other-Direct | - | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 |
| Other Manufacturing | 3.6 | 67.2 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 |
| Manufacturing | 3.6 | 144.3 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 |
| Legal (non bankruptcy) | - | | | | | | | | | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 |
| Warranty | - | 1.1 | 1.5 | 1.9 | 1.9 | 2.8 | 3.2 | 4.0 | 4.5 | 5.3 | 5.7 | 6.6 | 7.0 | 7.8 | 8.2 | 9.1 | 9.1 | 9.9 | 10.3 | 10.8 |
| Service | - | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 8.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 |
| Total Product Support | - | 4.8 | 5.3 | 5.7 | 5.7 | 6.5 | 6.9 | 7.8 | 8.2 | 19.0 | 19.5 | 20.3 | 20.7 | 21.6 | 22.0 | 22.2 | 22.8 | 23.7 | 24.1 | 24.5 |
| Delivery | - | - | 2.2 | 2.2 | - | 4.4 | 2.2 | 4.4 | 2.2 | 4.4 | 2.2 | 4.4 | 2.2 | 4.4 | 2.2 | 4.4 | - | 4.4 | 2.2 | - |
| Sales | - | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 |
| Commissions | - | | | | 6.4 | | | | | 19.2 | | | | 19.2 | | | | 22.4 | | |
| Shows/Rallies | - | 76.5 | 3.1 | | | 33.2 | 3.1 | | | | | 28.2 | 3.1 | | 82.8 | 3.1 | | | | 125.4 |
| Marketing | - | 7.9 | 7.9 | 7.9 | 7.9 | 7.9 | | 7.9 | 7.9 | 7.9 | 7.9 | 7.9 | 7.9 | 7.9 | 7.9 | 7.9 | | | 7.9 | 7.9 |
| Marketing relating to change of business | - | 10.0 | 25.0 | 35.0 | | | | | | | | | | | | | | | | |
| Other Disbursements (prop tax & w/c) | - | 423.5 | | | | | | | | | | | | | 90.0 | | | | | |
| Admin | 26.5 | 38.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 |
| Total SG&A | 26.5 | 556.1 | 83.0 | 89.8 | 59.0 | 90.3 | 58.0 | 57.0 | 54.8 | 76.2 | 83.1 | 60.2 | 54.8 | 166.2 | 137.6 | 60.2 | 52.6 | 79.4 | 54.8 | 180.2 |
| Operating Capital Expenditures | - | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 |
| Remodel of Sales Ctr | 30.0 | | | | | | | | | | | | | | | | | | | |
| Total Capital Expenditures | 32.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 |
| **Total Operating Outflows** | $ 30.1 | 1,107.7 | 606.1 | 496.3 | 401.2 | 489.9 | 253.4 | 409.6 | 360.9 | 358.7 | 375.7 | 371.2 | 309.5 | 163.1 | 513.5 | 407.9 | 358.7 | 323.7 | 279.5 | 397.3 |
| **Net Operating Cash Flow** | | | | | | | | | | | | | | | | | | | | |
| Total Net Operating Cash Flow | $ (30.1) | (1,107.7) | (200.5) | (90.7) | (401.2) | 388.9 | 219.8 | 469.2 | 1,282.3 | 520.1 | 97.5 | 507.6 | 163.7 | 715.7 | (40.3) | 470.9 | 163.3 | 556.4 | 195.1 | 77.2 |
| **Bankruptcy/Restructuring Cash Flow** | | | | | | | | | | | | | | | | | | | | |
| DIP Facility Interest & Fees | (80.1) | | | | (84.7) | | | | (67.2) | | | | (57.4) | | | | (48.1) | | | |
| DIP Senior Secured Counsel | | | | | (100.0) | | | | (60.0) | | | | (40.0) | | | | (20.0) | | | |
| Senior Secured Lender Profession & Other Fees | (80.1) | | | | (184.7) | | | | (127.2) | | | | (97.4) | | | | (68.1) | | | |
| Repayment of Wells Fargo LOC | | | | | | | | | | | | | | | | | | | | |
| DIP Sourcing Fee (focalpoint) | | | | | | | | | | | | | | | | | | | | |
| Company Counsel | | (75.0) | (90.0) | (25.0) | (25.0) | (25.0) | (25.0) | (20.0) | (20.0) | (20.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (20.0) | (20.0) | (20.0) |
| Restructuring Professionals/Claims Agent | | (50.0) | (45.0) | (15.0) | (15.0) | (15.0) | (32.5) | (7.5) | (7.5) | (7.5) | (7.5) | (7.5) | (7.5) | (7.5) | (7.5) | (7.5) | (7.5) | (27.5) | (27.5) | (7.5) |
| Company Professional & Other Fees | | (125.0) | (135.0) | (40.0) | (40.0) | (40.0) | (57.5) | (27.5) | (27.5) | (27.5) | (17.5) | (17.5) | (17.5) | (17.5) | (17.5) | (17.5) | (17.5) | (47.5) | (47.5) | (27.5) |
| Creditor Committee Professionals | | (25.0) | | (10.0) | (10.0) | (10.0) | (25.0) | (5.0) | (5.0) | (5.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | (5.0) | (5.0) | (10.0) |
| Restructuring Professionals | | (25.0) | | | | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) |
| Court & Trustee Fees | | (5.0) | | | | | | | | | | | | | | | (20.0) | | | |
| Court/Creditor Committee Costs & Fees | - | (55.0) | | (10.0) | (10.0) | (12.5) | (12.5) | (7.5) | (7.5) | (7.5) | (7.5) | (12.5) | (12.5) | (12.5) | (12.5) | (12.5) | (12.5) | (32.5) | (7.5) | (12.5) |
| **Total Bankruptcy Disbursements** | $ (80.1) | (180.0) | (135.0) | (50.0) | (234.7) | (52.5) | (105.0) | (35.0) | (35.0) | (142.2) | (35.0) | (25.0) | (25.0) | (102.4) | (25.0) | (25.0) | (45.0) | (35.0) | (103.1) | (40.0) |
| **Total Expenditures** | $ 110.2 | 1,287.7 | 741.1 | 546.3 | 635.9 | 542.4 | 358.4 | 444.6 | 395.9 | 500.9 | 410.7 | 396.2 | 334.5 | 265.5 | 538.5 | 432.9 | 403.7 | 358.7 | 382.6 | 437.3 |
| **Net Cash Flow** | | | | | | | | | | | | | | | | | | | | |
| Total Net Cash Flow | $ (110.2) | (1,287.7) | (335.5) | (140.7) | (635.9) | 336.4 | 114.8 | 434.2 | 1,247.3 | 377.9 | 62.5 | 482.6 | 138.7 | 613.3 | (65.3) | 445.9 | 118.3 | 521.4 | 92.0 | 37.2 |

**EXHIBIT A**

**Page 1 of 2**

**Country Coach LLC**
**Cash Flow Forecast**

*dollars in thousands*

| | 8-21-09 | 8-28-09 | 9-4-09 | 9-11-09 | 9-18-09 | 9-25-09 | 10-2-09 | 10-9-09 | 10-16-09 | 10-23-09 | 10-30-09 | 11-6-09 | 11-13-09 | 11-20-09 | 11-27-09 | 12-4-09 | 12-11-09 | 12-18-09 | 12-25-09 | 1-1-10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week # | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 |
| **Production Schedule** | | | | | | | | | | | | | | | | | | | | |
| MH # Weeks in Inventory | | | | | | | | | | | | | | | | | | | | |
| # MH Produced | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| # Bus Produced | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Non-Used Motor Home Inventory | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| **Sales Schedule** | | | | | | | | | | | | | | | | | | | | |
| MH Sales 2008/2009 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| MH Sales 2010 | 1 | 1 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Total New Sales | 1 | 1 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Cummulative Number of Units sold | 24 | 25 | 26 | 27 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 33 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | |
| **Operating Cash Inflows** | | | | | | | | | | | | | | | | | | | | |
| Cash received from customers | 474.5 | 474.5 | 474.5 | 474.5 | 523.3 | 474.5 | 474.5 | 474.5 | 473.2 | 474.5 | 474.5 | 523.3 | 523.3 | 523.3 | 474.5 | 474.5 | 473.2 | 474.5 | 474.5 | 474.5 |
| **Total Operating Inflows** | 474.5 | 474.5 | 474.5 | 474.5 | 523.3 | 474.5 | 474.5 | 474.5 | 473.2 | 474.5 | 474.5 | 523.3 | 523.3 | 523.3 | 474.5 | 474.5 | 473.2 | 474.5 | 474.5 | 474.5 |
| **Operating Cash Outflows** | | | | | | | | | | | | | | | | | | | | |
| Inventory A/P Payments | 63.3 | 79.7 | 95.5 | 89.0 | 191.8 | 189.6 | 296.7 | 244.8 | 271.1 | 361.6 | 291.5 | 266.2 | 269.7 | 283.5 | 275.5 | 262.2 | 256.9 | 271.2 | 251.7 | 247.8 |
| 2009 Raw Material Reduction Per Week | (26.7) | (26.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) | (56.7) |
| Bus Shell | | | | | | | | | | | | | | | | | | | | |
| Total Material Purchases | 36.6 | 53.0 | 38.8 | 32.3 | 135.1 | 132.9 | 240.0 | 188.1 | 214.4 | 304.9 | 234.8 | 209.5 | 213.0 | 226.8 | 218.8 | 206.5 | 200.2 | 214.5 | 195.0 | 191.1 |
| Purchase of New Model & Wholesale Trades | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll manufacturing direct | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 | 61.7 |
| Payroll Taxes, Benefits, and other-Direct | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 | 15.4 |
| Other Manufacturing | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 | 70.8 |
| Manufacturing | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 | 147.9 |
| Legal (non bankruptcy) | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 | 10.0 |
| Warranty | 11.2 | 11.6 | 12.0 | 12.4 | 12.4 | 12.9 | 13.3 | 13.7 | 14.1 | 14.5 | 15.0 | 15.0 | 15.0 | 15.4 | 15.8 | 16.2 | 16.6 | 17.1 | 17.5 | |
| Service | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 | 3.7 |
| Total Product Support | 24.9 | 25.3 | 25.8 | 26.2 | 26.2 | 26.6 | 27.0 | 27.4 | 27.9 | 28.3 | 28.7 | 28.7 | 28.7 | 29.1 | 29.5 | 30.0 | 30.4 | 30.8 | 31.2 | |
| Delivery | 2.2 | 2.2 | 2.2 | 2.2 | - | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | - | - | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | 2.2 | |
| Sales | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | - | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | 8.4 | |
| Commissions | - | - | 12.8 | - | - | - | - | - | - | - | - | 16.0 | - | - | - | - | 3.2 | - | - | 12.8 |
| Shows/Rallies | 3.1 | - | - | - | 5.0 | 3.1 | - | - | 20.1 | 0.6 | - | - | 0.6 | - | - | 0.6 | 5.0 | - | - | |
| Marketing | 7.9 | 7.9 | - | 7.9 | 7.9 | 7.9 | 7.9 | - | 7.9 | 7.9 | 7.9 | 7.9 | 7.9 | 7.9 | 7.9 | - | 7.9 | 7.9 | 7.9 | 7.9 |
| Marketing relating to change of business | | | | | | | | | | | | | | | | | | | | |
| Other Disbursements (prop tax & w/c) | - | - | - | - | - | - | 90.0 | - | - | - | - | - | - | - | - | - | - | - | - | 90.0 |
| Admin | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 | 36.3 |
| Total SG&A | 58.0 | 54.8 | 67.6 | 59.9 | 55.8 | 54.8 | 154.4 | 74.9 | 55.5 | 54.8 | 54.8 | 68.6 | 53.3 | 52.6 | 54.8 | 58.7 | 59.8 | 54.8 | 54.8 | 157.6 |
| Operating Capital Expenditures | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 |
| Remodel of Sales Ctr | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Capital Expenditures | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 | 2.0 |
| **Total Operating Outflows** | 269.4 | 283.1 | 282.1 | 268.2 | 367.0 | 364.2 | 571.3 | 440.3 | 447.6 | 537.9 | 468.2 | 456.7 | 444.9 | 458.0 | 452.7 | 444.6 | 439.9 | 449.7 | 430.6 | 529.8 |
| **Net Operating Cash Flow** | | | | | | | | | | | | | | | | | | | | |
| **Total Net Operating Cash Flow** | 205.1 | 191.4 | 192.4 | 206.3 | 156.3 | 110.3 | (96.8) | 34.2 | 25.6 | (63.4) | 6.3 | 66.6 | 78.4 | 65.3 | 21.9 | 30.0 | 33.3 | 24.9 | 44.0 | (55.3) |
| **Bankruptcy/Restructuring Cash Flow** | | | | | | | | | | | | | | | | | | | | |
| DIP Facility Interest & Fees | - | - | (44.9) | - | - | - | (43.9) | - | - | - | - | (44.4) | - | - | - | (42.9) | - | - | - | (42.1) |
| DIP Senior Secured Counsel | - | - | (20.0) | - | - | - | (20.0) | - | - | - | - | (22.0) | - | - | - | (22.0) | - | - | - | (24.0) |
| Senior Secured Lender Profession & Other Fees | - | - | (64.9) | - | - | - | (63.9) | - | - | - | - | (64.9) | - | - | - | (64.9) | - | - | - | (66.1) |
| Repayment of Wells Fargo LOC | | | | | | | | | | | | | | | | | | | | |
| DIP Sourcing Fee (focalpoint) | - | (50.0) | - | - | - | | | | | | | | | | | | | | | |
| Company Counsel | (20.0) | (20.0) | (25.0) | (25.0) | (40.0) | | | | | | | | | | | | | | | |
| Restructuring Professionals/Claims Agent | (7.5) | (7.5) | (7.5) | (7.5) | (30.0) | | | | | | | | | | | | | | | |
| Company Professional & Other Fees | (27.5) | (77.5) | (32.5) | (32.5) | (70.0) | | | | | | | | | | | | | | | |
| Creditor Committee Professionals | (10.0) | (10.0) | (10.0) | (10.0) | (10.0) | | | | | | | | | | | | | | | |
| Restructuring Professionals | (2.5) | (2.5) | (2.5) | (2.5) | (2.5) | | | | | | | | | | | | | | | |
| Court & Trustee Fees | | | | | | | | | | | (20.0) | | | | | | | | | |
| Court/Creditor Committee Costs & Fees | (12.5) | (12.5) | (12.5) | (12.5) | (12.5) | | | | | | (20.0) | | | | | | | | | |
| **Total Bankruptcy Disbursements** | (40.0) | (90.0) | (109.9) | (45.0) | (82.5) | - | (63.9) | - | - | (20.0) | - | (66.4) | - | - | (64.9) | - | - | - | - | (42.1) |
| **Total Expenditures** | 309.4 | 373.1 | 392.0 | 313.2 | 449.5 | 364.2 | 635.2 | 440.3 | 447.6 | 557.9 | 468.2 | 523.1 | 444.9 | 458.0 | 452.7 | 509.5 | 439.9 | 449.7 | 430.6 | 595.9 |
| **Net Cash Flow** | | | | | | | | | | | | | | | | | | | | |
| **Total Net Cash Flow** | 165.1 | 101.4 | 82.5 | 161.3 | 73.8 | 110.3 | (160.7) | 34.2 | 25.6 | (83.4) | 6.3 | 0.2 | 78.4 | 65.3 | 21.9 | (34.9) | 33.3 | 24.9 | 44.0 | (121.4) |

**EXHIBIT A**
**Page 2 of 2**