**DISTRICT OF OREGON**

**F I L E D**

**January 04, 2010**

**Clerk, U.S. Bankruptcy Court**

IT IS ORDERED AND NOTICE IS GIVEN that unless within 23 days of the date in the FILED stamp above an interested party BOTH: (1) files a written objection to the Motion below, SETTING FORTH the specific grounds for such objection, with the Clerk of Court (i.e., if the 5-digit portion of the Case No. begins with 3 or 4, at 1001 SW 5th Ave. #700, Portland OR 97204; OR, if it begins with a 6 or 7, at 405 E 8th Ave #2600, Eugene OR 97401), AND (2) serves a copy on the movant and any attorney for the movant at the service address(es) below, the movant will thereafter settle and compromise the matter upon the terms below and the settlement will be deemed approved without further order.


ALBERT E. RADCLIFFE
U.S. Bankruptcy Judge

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | |
| COUNTRY COACH LLC | ) | Case No. 09-60419-aer7 |
| | ) | |
| | ) | MOTION AND NOTICE OF INTENT |
| | ) | TO SETTLE AND COMPROMISE, |
| Debtor(s) | ) | **AND ORDER THEREON** |

The undersigned trustee, <u>KENNETH S. EILER</u>, moves to settle and compromise the following described dispute upon the following terms:

The Trustee and the debtor's landlord, Lee Joint Ventures (LJV), have a dispute regarding the extent to which the debtor and/or Wells Fargo Bank NA (Wells Fargo) is required to repair/replace portions of the roof where the debtor's property is located. In addition the Trustee and LJV have a dispute regarding what property (disputed property) located in these buildings belongs to the bankruptcy estate and should be subject to sale or auction by the Trustee and what property should stay with the building and become the property of LJV free from any claim of the bankruptcy estate or the debtor's creditors. Wells Fargo is the debtor's principal creditor, has assumed responsibility for certain payments to LJV and for building maintenance pursuant to a settlement agreement with the bankruptcy estate now pending, and claims a first lien against the disputed property. To settle the claims of the bankruptcy estate, LJV and Wells Fargo the Trustee has agreed to convey the property described on Exhibit A attached hereto to LJV free and clear of liens and encumbrances and LJV has agreed to release its claim to any other property subject to auction or sale by the Trustee and to further drop its claim that the bankruptcy estate and/or Wells Fargo is responsible for further repairs or replacement of the roof. A complete copy of the settlement agreement together with Exhibit A is attached to this settlement notice. Considering the cost to litigate this matter, the uncertainty of the outcome and the delay occasioned thereby, the Trustee recommends the settlement.

###

DATE:  1-4-10                    /s/ KENNETH S. EILER
                                                    Trustee

        Service Address:   PMB 810, 515 NW SALTZMAN RD

                          PORTLAND, OR  97229

Name of Attorney for Trustee:   _____

        Service Address:   _____

                          _____

## ASSET TRANSFER AND RELEASE
## AGREEMENT ("Agreement")

**DATE:**

December 31, 2009

**PARTIES:**

LEE JOINT VENTURE ("***LJV***")

WELLS FARGO BANK, N.A. ("***Wells Fargo***")

and

KENNETH S. EILER, CHAPTER 7 TRUSTEE ("***Trustee***")
FOR THE ESTATE OF COUNTRY COACH, LLC

**RECITALS:**

A. Country Coach, LLC ("***Debtor***") is the debtor in the Chapter 7 United States Bankruptcy Court Case No. 09-60419-Chapter 7 (the "***Bankruptcy***") in the United States Bankruptcy Court for the District of Oregon (the "***Bankruptcy Court***").

B. LJV is the owner and landlord of (i) certain land, buildings and improvements thereon described as the "Premises" under that certain Real Property Lease dated October 12, 1995, between LJV and Country Coach, Inc. (the "***October 1995 Lease***") and (ii) that certain real property referred to as "Country Coach Building #14" together with improvements thereon as described in the certain lease between LJV and National R.V. Holding's, Inc., dated November 2, 1999 (the "***November 1999 Lease***"). All of the real property, buildings and improvements referenced in the October 1995 Lease and the November 1999 Lease (collectively, the "***Lease***," as such Lease has been extended and amended), are referred to herein as the "***Premises***."

C. Wells Fargo extended Debtor-in-Possession financing (the "***DIP Financing***") to Debtor pursuant to the terms of that certain Debtor-in-Possession Credit and Security Agreement by and between Debtor and the Bank (the "***DIP Credit Agreement***") and the Final Order (I) Authorizing Debtor (A) to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to Lender Pursuant to 11 U.S.C. §§ 361, 362 and 363 (III) Modifying Automatic Stay, and (IV) Providing Other Relief (the "***Final Financing Order***") entered by the Court on April 15, 2009.

D.  Pursuant to the terms of the DIP Financing and the Final Financing Order, Wells Fargo has a first priority security interest (the "***Wells Fargo Lien***") in all of the personal property situated on the Premises, including, but not limited to, the personal property listed on <u>Exhibit A</u>, which exhibit is attached hereto and incorporated herein by this reference.  The personal property listed in <u>Exhibit A</u> is referred to herein as the "***LJV Sale Assets.***"

E.  The LJV Sale Assets are part of the Debtor's bankruptcy estate (the "***Bankruptcy Estate***") and are subject to liquidation by the Trustee under Chapter 7 of Title 11 of the United States Code (the "***Bankruptcy Code***").

F.  Wells Fargo is paying rent and other expenses for the Premises pursuant to the terms of the March 2009 Lease Amendment Agreement between LJV and Debtor (the "***March Lease Amendment***") for purposes of holding, processing, manufacturing, selling, using, storing liquidating, realizing upon or otherwise disposing of Debtor's personal property located on the Premises through the Bankruptcy Estate under the Bankruptcy Code.

G.  There is a dispute among the parties as to the obligation of Wells Fargo or the Debtor to replace, repair or maintain the roofs on Buildings 1 and 2 at the Premises pursuant to the Lease and the March Lease Amendment (the "***Roof Repair***").

H.  LJV desires to obtain title and possession of the LJV Sale Assets free and clear from all liens, claims and encumbrances, including, but not limited to, the Wells Fargo Lien.  The Trustee on behalf of the Bankruptcy Estate is willing to sell all of its right, title and interest in the LJV Sale Assets to LJV, and Wells Fargo is willing to release the Wells Fargo Lien on the LJV Sale Assets, in each instance in consideration of LJV releasing any claim it or its affiliates may have or may ever have against Wells Fargo, the Debtor, the Bankruptcy Estate or the Trustee regarding the Roof Repair or any other repairs for any damages to the Premises, known or unknown, that occurred or accrued prior to December 28, 2009, except for those associated with the burst pipes in the Human Resources Building (collectively, the "***Pre-Existing Claims***").

I.  The parties are entering into this Agreement to reflect the terms and conditions for resolving the Roof Repair dispute, releasing any Pre-Existing Claim against Wells Fargo, the Trustee and the Bankruptcy Estate and transferring ownership of the LJV Sale Assets from the Bankruptcy Estate to LJV.

**AGREEMENTS:**

1.  <u>Recitals</u>.  The above Recitals are deemed true and incorporated herein by this reference.

2.  <u>Asset Sale and Release</u>.  Effective immediately upon the Closing (defined below): (i) the Trustee hereby sells all of the Bankruptcy Estate's right, title and interest in the LJV Sale Assets to LJV free and clear of liens, claims and encumbrances, including, without limitation the Wells Fargo Lien; and (ii) LJV hereby fully and finally releases Wells Fargo, the Debtor, the Trustee, the Bankruptcy Estate, and any persons acting under, through, by or on behalf of Wells Fargo, the Debtor or of the Bankruptcy Estate, from and against any Pre-Existing Claims,

including, without limitation, any Roof Repair claims, on the terms and conditions of this Agreement.

3.    <u>Action to Effect Sale</u>.  Trustee agrees to immediately prepare and file a motion with the Bankruptcy Court no later than January 4, 2010 ("***Sale Motion***") seeking Bankruptcy Court approval, through the entry of a Bankruptcy Court order ("***Sale Order***"), of the sale of the LJV Sale Assets to LJV free and clear of liens, claims and encumbrances, including, without limitation the Wells Fargo Lien, and the release of Pre-Existing Claims (collectively, the "***Releases***") on the terms and conditions of this Agreement.

4.    <u>Closing</u>.  The closing of the Asset sale ("***Closing***") shall take place promptly following approval of this Agreement by the Bankruptcy Court and entry of the Sale Order and in any event no later than February 2, 2009.  At Closing, (i) the Trustee will deliver a Bill of Sale regarding the sale, transfer and conveyance of the LJV Sale Assets to LJV on an AS-IS, WHERE-IS basis without additional representation or warranty, and (ii) LJV's release of Wells Fargo, the Bankruptcy Estate, the Debtor and any persons acting under, through, by or on behalf of Wells Fargo, the Debtor or the Bankruptcy Estate from the Pre-Existing Claims and the Releases will go into effect immediately and automatically without the need for further documentation or action by any party.

5.    <u>No Liability for Failure to Close</u>.  In the event that the Bankruptcy Court does not approve this Agreement on the terms and conditions set forth herein, Wells Fargo, the Debtor, the Bankruptcy Estate, and LJV shall return to the *status quo* under the March Lease Amendment immediately prior to execution of this Agreement.

6.    <u>No Representations Regarding LJV Sale Assets</u>.  The Bankruptcy Estate sells the LJV Sale Assets on an AS-IS, WHERE-IS basis, and neither the Trustee, the Bankruptcy Estate nor Wells Fargo make or imply any representation or warranty regarding any aspect of the LJV Sale Assets.

7.    <u>Representations and Warranties</u>.

7.1    <u>Authorization</u>.  Each of LJV, Wells Fargo and the Trustee represent that each has all requisite power, authority and legal capacity to execute and deliver this Agreement and each other agreement, document, or instrument or certificate contemplated by this Agreement (collectively, the "***Documents***"), and to consummate the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Documents will be at or prior to the Closing, duly and validly executed and delivered by the respective party, and this Agreement constitutes the legal, valid and binding obligations of such party, enforceable against such party in accordance with their respective terms consistent with the Sale Order.

7.2    <u>Premises Free from Damage or Repairs</u>.  LJV represents and warrants to Debtor, the Bankruptcy Estate and Wells Fargo that, as of the date of this Agreement and at Closing, and other than (i) the roofs on Buildings 1 and 2 and (ii) damage resulting from a burst pipe in the Human Resources Building, there are no structural problems existing to the Premises

or structural repairs needed to be made the Premises or Pre-Existing Claims with respect to the Premises.

8.    <u>Court Approval</u>.  This Agreement is conditioned upon approval of the United States Bankruptcy Court and entry of the Sale Order, but nothing in this Agreement shall be binding on any party to this Agreement absent Bankruptcy Court approval.  The Trustee shall seek to have the Sale Motion heard contemporaneously with the Trustee's motion to sell the assets of the Bankruptcy Estate.

9.    <u>Lease Amendment</u>.  The March Lease Amendment remains in full effect according to its terms except as amended by this Agreement.

10.    <u>Necessary Documents</u>.  Each party shall execute and deliver to the other party any documents that may be reasonably required to accomplish the intentions of this instrument, and shall do all things necessary to this end, within ten (10) days from the date of the entry of the Sale Order.

11.    <u>Further Assurances</u>. During the term of this Agreement, each party shall provide reasonable assistance to and cooperation with the other party to the extent reasonably requested by the other party in order to facilitate or better effect the transactions contemplated herein

12.    <u>Modification</u>. No waiver or modification of this Agreement, or any covenant, condition or provision thereof shall be valid unless in writing and duly executed by the party to be charged therewith

13.    <u>Non-Assignability</u>.  No party may assign any of its rights, duties or obligations under this Agreement to any third party without the prior written consent of the other parties, and there shall be no third party beneficiaries of or to this Agreement.

14.    <u>Governing Law</u>. This Agreement and all disputes related hereto shall be governed by the laws of the State of Oregon. The parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court to resolve all disputes arising under this Agreement.

15.    <u>Counterparts</u>. This Agreement may be executed in separate counterparts, each of which is deemed to be an original and all of which when taken together constitute one and the same agreement.

[Signatures Appear on the Following Page]

**LJV:**

LEE JOINT VENTURE

By:_____
       RONALD E. LEE, Partner

By:_____
       ROBERT E. LEE, Partner

By:_____
       TERRY N. LEE, Partner

**WELLS FARGO:**

WELLS FARGO BANK, N.A.

By:_____
       Name:_____
       Title:_____

**TRUSTEE:**

_____
KENNETH S. EILER, Chapter 7 Trustee for the
Estate of Country Coach, LLC

EXHIBIT A TO ASSET TRANSFER AGREEMENT

Building #1 (135 E. First Ave. South Side)

Overhead Crane Systems - Front Section of Bldg. 1 -  Production Area
 (1) Three (3) rail - two (2) Bridges with two (2) 1 ton crane motors - approximately 55 ft. long
    with hand controls - 200 ft. of rail - approximately

(1) Three (3) rail - one (1) Bridge with one (1) 1 ton crane motor - with hand controls, etc.

(1) Two (2) rail - one (1) Bridge with one (1) ton crane motor

(1) Two (2) rail - one (1) Bridge with 1/2 ton crane motor

Bldg. #1 Paint Booths

(2) Two - 22 Ft x 60 Ft. (Approximate Size)

(7) Seven - 18 Ft. x 55 Ft. (Approximate Size)

All nine (9) have air make up units on roof with fresh air systems on each booth (mounted on the sides of
the booths).  Each booth has an air supply system and electrical supply panel.


Building #5 - Fiberglass -  (135 E. First Ave. South Side)

Located on the outside of the building.

(1) one - one ton (1) one rail - (1) one bridge with (2) crane motors.

Building #8 - Chassis Plant - (135 E. First Ave. South Side)

Overhead Crane System - South Section of Building

(1) one - (2) two rail - 300 Ft. - (2) two Bridges with (1) one ton capacity each - (2) two crane motors

(1) one - (2) two rail - 200 Ft. - (1) one Bridge with (1) one ton capacity with (1) one crane motor

(1) one - (2) two rail - 50 Ft. - (1) one Bridge with (1) one tone capacity with (1) one crane motor

Overhead Crane System - North Section of Building

(1)  one - (2) two rail - 200 Ft. - (2) two Bridges with (2) two ton capacity with (2) two crane motors

(1) one - (2) two rail - 300 Ft. (3) three Bridges with (1) one ton capacity with (3) three crane motors

Paint Booths - Building #8 -  (1) in the South Section - (1) in the North Section of building

(2) two - 18 Ft x 50 Ft. - these have all  the same equipment etc. as the paint booths in Bldg. #1

Note:  There were (13) thirteen loose crane motors that came from the various bridge cranes that had not
been re-installed. These are being conveyed.

Building #14 - Dyno Center - (135 E. First Ave. South Side)

Outside Crane

(1) one - (2) two rail - 45 Ft. - (2) two Bridges -  7 1/2 ton capacity with (2) two crane motors

Inside Building #14 - Dynamometer by SuperFlow
  This equipment is in the pit area underground and was not photograph able - you can not see it covered by the Resistance Rolls.
Other component pieces were the Resistance Rolls, large water tank, a power hood and (2) two SuperFlow Control Panels (1) on a movable arm and (1) is a remote inside the control office.

Also in this building built in the floor - is a Hunter B400T Brake Tester System and Weight Scales
(4) Four Underground Equipment Cells
Computer and Control Panels for this in the control office.

In the Alignment section of the building set in a floor pit is the Alignment Rack with equipment - the Hunter K111 Alignment Station.

Building #2 - (130 E. First Ave. North Side) the Allure & Intrigue Plant with Cabinet Shop

Overhead Cranes - West side of Bldg.

(1) one - (2) two rail - 50 Ft. Approximately - (1) one Bridge - (1) one ton capacity with (2) two crane motors

(1) one - (2) two rail - 250 Ft. Approximately - (5) five Bridges - (1) one tone capacity with (6) six crane motors.

Building #2 - Paint Booths

(2) two - 18 Ft. x 55 Ft. Booths - with the same equipment etc. as in Bldg. #1

Cabinet Shop Inside Building #2

Dust Collecting System - all ducting is hanging from the ceiling area's.

Dust Collector - located outside of building on the West side.